O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MAUREEN UCHE-UWAKWE,      )    Case No. EDCV 12-01562 VAP
                         )    (OPx)
             Plaintiff,   )
                         )    **ORDER GRANTING IN PART AND**
     v.                   )    **DENYING IN PART DEFENDANT**
                         )    **SHINSEKI'S MOTION FOR**
ERIC K. SHINSEKI,         )    **SUMMARY JUDGMENT**
SECRETARY OF VETERANS     )
AFFAIRS; BRIAN KAWAHARA,  )    **[Motion filed on August 19,**
AN INDIVIDUAL,           )    **2013 ]**
                         )
             Defendants.  )
_____ )

     Defendant Eric K. Shinseki's Motion for Summary

Judgment came before the Court for hearing on September

16, 2013.  After reviewing and considering all papers

filed in support of, and in opposition to, the Motion, as

well as the arguments advanced by counsel at the hearing,

the Court GRANTS IN PART AND DENIES IN PART the Motion.


                    **I. BACKGROUND**

     On September 12, 2012, Plaintiff Maureen Uche-Uwakwe

("Plaintiff") filed a Complaint against Defendants Eric

K. Shinseki, in his official capacity as the Secretary of

Veterans Affairs ("VA"), and Brian Kawahara, alleging the following claims: (1) retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, et seq. ("Title VII"), against Defendant Shinseki; (2) race and ancestry discrimination in violation of 42 U.S.C. § 1981, against all Defendants; and (3) "harassment/hostile work environment," in violation of 42 U.S.C. § 1981, against all Defendants.  (See Compl., Doc. No. 1.)  The Complaint alleged, inter alia, that Plaintiff was subjected to harassment at the Loma Linda Veterans Affairs Medical Center ("LLVAMC"), where Plaintiff was the only African-American pharmacist, causing her to make numerous complaints both informally and formally, including filing Equal Employment Opportunity ("EEO") complaints and a federal lawsuit that named her co-workers, supervisors, and the Chief of Pharmacy Services, Brian Kawahara.  (See Compl. ¶¶ 8-34.)

On December 5, 2012, Plaintiff filed a First Amended Complaint ("FAC"), naming the same Defendants in the case caption but directing the claims against only Defendant Shinseki, for retaliation in violation of Title VII, and for harassment/hostile work environment in violation of Title VII.  (See FAC, Doc. No. 18.)  Plaintiff then filed a "Joint Stipulation to Amend Amended Complaint" on January 3, 2013, and filed a Second Amended Complaint ("SAC") on January 8, 2013.  (See Doc. Nos. 19, 20.)

1    In the SAC, Plaintiff alleged claims for retaliation
2 in violation of Title VII against Defendant Shinseki, and
3 "harassment/hostile work environment" in violation of
4 Title VII against Defendant Shinseki; despite naming
5 Kawahara as a Defendant, Plaintiff did not allege any
6 claims against him in the SAC.  (<u>See</u> SAC.)

7

8    On January 14, 2013, Plaintiff filed a Notice of
9 Dismissal pursuant to Federal Rule of Civil Procedure
10 41(a)(1) as to Defendant Kawahara.  (<u>See</u> Doc. No. 21.)
11 Defendant Shinseki filed an Answer to the SAC on January
12 24, 2013.  (<u>See</u> Doc. No. 23.)

13

14    On August 19, 2013, Defendant Shinseki (hereinafter
15 "Defendant") filed a Notice of Motion and Motion for
16 Summary Judgment ("Motion"), along with the Declaration
17 of Cory Werdebaugh ("Werdebaugh Decl.") and attached
18 Exhibits 1 through 6, the Declaration of Indira Cameron-
19 Banks ("Cameron-Banks Decl.") and attached Exhibits 7
20 through 11, and a Statement of Uncontroverted Facts and
21 Law ("DSUF").[1]  (<u>See</u> Doc. No. 49.)  On August 22, 2013,

22 _____

23    [1]    In his DSUF, Defendant fails to cite to the
relevant portions of deposition or hearing transcripts by
24 page and line numbers, in violation of the Court's
Standing Order.  (<u>See</u> Doc. No. 13 at 3.)  The Court
25 reminds Defendant that "'judges are not like pigs,
hunting for truffles buried in briefs.'"  <u>Guatay</u>
26 <u>Christian Fellowship v. Cnty. of San Diego</u>, 670 F.3d 957,
987 (9th Cir. 2011) (quoting <u>Greenwood v. FAA</u>, 28 F.3d
27 971, 977 (9th Cir. 1994)); <u>United States v. Dunkel</u>, 927
F.2d 955, 956 (7th Cir. 1991) (per curiam)), <u>cert.</u>
28                                        (continued...)

3

1  Defendant filed a Notice of Errata, attaching a corrected

2  version of Exhibit 8 to the Cameron-Banks Declaration.[2]

3  (See Doc. No. 50.)

4

5      On August 26, 2013, Plaintiff filed Opposition to the

6  Motion ("Opposition" or "Opp'n"), along with a Separate

7  Statement of Undisputed Facts in Support of Plaintiff's

8  Opposition ("PSUF"), the Declaration of Maureen Uche-

9  Uwakwe ("Uche-Uwakwe Decl.") and attached Exhibits A

10 through S, the Declaration of Joseph D. Curd ("Curd

11 Decl.") and attached Exhibits T through AA, Objections to

12 Evidence in Support of Opposition ("Pl. Evid. Obj."), and

13 Notice of Lodging of Authorities in Support of

14 Opposition.[3]  (See Doc. No. 51.)  Plaintiff also filed a

15

16      [1](...continued)

17 denied, 133 S. Ct. 423 (2012).  The Court also notes that
   Defendant's use of brackets around the testimony upon

18 which he relies, which is also required by the Court's
   Standing Order, is at times inaccurate.

19
        [2]    The Exhibit 8 filed with the Errata contains
20 what appears to be a separator page following page 8-5,
   and then Exhibit 8 is repeated a second time, from pages
21 8-1 to 8-5.  To the extent Defendant relies on pages 8-6
   to 8-7 in his DSUF, the Court has not been provided with
22 those pages and cannot evaluate whether or not those
   pages support the factual assertions that rely upon them.

23
        [3]    Plaintiff's Declarations and attached Exhibits
24 are not separated by tabs, as required by Local Rule 11-
   5.3.  The Court notes, however, that Plaintiff includes a
25 footer on every page of her exhibits, to which she cites
   in her PSUF, which has assisted the Court when reviewing
26 the Opposition papers.  The Court also notes that
   Plaintiff's Opposition memorandum fails to cite to
27 supporting evidence throughout the argument section.  The
   Court provides the same reminder to Plaintiff as it has

28                                              (continued...)

4

1   Notice of Errata, correcting the hearing time for the

2   Motion reflected on the cover page of her Opposition

3   papers.

4

5       On August 31, 2013, Defendant untimely[4] filed a Reply

6   in support of his Motion, the Declaration of Cory

7   Werdebaugh in support of the Reply ("Supp. Werdebaugh

8   Decl.") and attached Exhibit 13, the Declaration of

9   Indira Cameron-Banks ("Supp. Cameron-Banks Decl.") and

10  attached Exhibits 14 and 15, and Evidentiary Objections

11  to the Uche-Uwakwe Declaration.[5]

12

13

14

_____

15      [3](...continued)

16  to Defendant, _i.e._, "'judges are not like pigs hunting
    for truffles buried in briefs'."  _Guatay_, 670 F.3d at 987

17  (citation omitted).

18      [4]   Defendant's Reply papers were due to be filed on
    Friday, August 30, 2013 because of the Labor Day holiday

19  on Monday, September 2, 2013, _i.e._, the date the papers
    would have been due to be filed ordinarily, absent a

20  holiday, give the hearing on the Motion set for September
    16, 2013.  _See_ L.R. 6-1.  The Court's Standing Order

21  clearly states: "Any opposition or reply papers due on a
    holiday are due the preceding Friday, not the following

22  Tuesday."  (_See_ Doc. No. 13 at 2.)  Defendant's Reply
    papers, thus, are untimely.  In the interest of justice,

23  however, and in light of the absence of undue prejudice
    to Plaintiff in Defendant's filing the Reply papers one

24  day late, the Court will consider the Reply papers when
    evaluating the instant Motion.

25
        [5]   Defendant did not file any response to
26  Plaintiff's Separate Statement of Undisputed Facts.
    Accordingly, the Court deems these facts undisputed for

27  purposes of the Motion, to the extent they are
    sufficiently supported by the cited evidence.  _See_ Fed.

28  R. Civ. Proc. 56(e)(2); L.R. 56-3; (Doc. No. 13 at 5-6).

On September 3, 2013, Defendant filed a Notice of Lodging the Table of Contents and Table of Authorities, apparently inadvertently omitted from the Reply filing, as well as a Notice of Lodging Proposed Order, apparently also inadvertently not filed with the moving papers. (See Doc. Nos. 57, 58.)

## II. LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has the burden at trial, "that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." Celotex, 477 U.S. at 331.  The burden then shifts to the non-moving party "and requires that party . . . to produce evidentiary materials that demonstrate the existence of a 'genuine issue' for trial." Id.; Anderson, 477 U.S. at 256; Fed. R. Civ. P. 56(a).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id. The burden then shifts to the non-moving party to show that there is a genuine dispute of material fact that must be resolved at trial. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248.  In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. EVIDENTIARY RULINGS

Before setting forth the uncontroverted facts in this action, the Court examines the admissibility of the evidence offered by both sides in support of, and opposition to, the Motion.

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  Id. (citation omitted).

**A. Plaintiff's Objections**

   Plaintiff objects to portions of the Declaration of Cory Werdebaugh filed in support of the Motion, as well as to several DSUFs.

   **1.   Objections to Werdebaugh Declaration**

   Plaintiff objects to a sentence in paragraph 7 of the Werdebaugh Declaration, _i.e._, "I remember the Chief of HR ... related to workers' compensation liability" on the basis of hearsay, that it lacks foundation, and that it calls for a legal conclusion.  (See Pl. Obj. at 2.)  The Court sustains Plaintiff's hearsay objection and finds the assertion inadmissible, as it is not offered against a party opponent who made the statement.  See Fed. R. Evid. 801(d)(2).

   Plaintiff objects to a sentence in paragraph 8 of the Werdebaugh Declaration, _i.e._, "I believe that it was an appropriate ... chronically understaffed at that time" on the basis that it lacks foundation, and is irrelevant. (See Pl. Obj. at 2.)  The Court sustains Plaintiff's lacks foundation objection and finds the assertion inadmissible, as the declarant has not established any personal knowledge of the staffing needs of the outpatient pharmacy and she has not provided her personal knowledge that she was familiar with the circumstances under which Plaintiff had previously been reassigned or

1  how she know those issues were "no longer applicable."
2  See Fed. R. Evid. 602.

3

4      Plaintiff objects to another sentence in paragraph 8
5  of the Werdebaugh Declaration, i.e., "I also recall that
6  ... performance as an outpatient pharmacist" on the basis
7  of hearsay and that it lacks foundation.  (See Pl. Obj.
8  at 3.)  The Court sustains Plaintiff's hearsay objection
9  and finds the assertion inadmissible, as statements made
10 by Plaintiff's "line supervisor in the inpatient
11 pharmacy" are inadmissible hearsay and not offered
12 against a party opponent who made the statement.  See
13 Fed. R. Evid. 801(d)(2).

14

15     Plaintiff objects to a portion of a sentence in
16 paragraph 9 of the Werdebaugh Declaration, i.e., "which
17 places an undue burden on the pharmacy service" on the
18 basis that it lacks foundation and personal knowledge.
19 (See Pl. Obj. at 3.)  The Court sustains both objections,
20 as the declarant has not established the declarant's
21 personal knowledge of the staffing needs of the pharmacy
22 service.  See Fed. R. Evid. 602.

23

24     **2.   Objections to Defendant's SUFs**
25     The Court sustains Plaintiff's objections to the
26 following of DSUFs on the basis that the cited evidence
27 does not support the purported statement of fact: ¶¶ 3,
28

14, 19, 28, 33, 34, and 35.  As to DSUF ¶ 3, the Court finds a portion of the fact is supported by the cited evidence, but the statement "but desired it as a personal educational goal" is not supported; accordingly, the Court will not consider that portion.  Likewise, as to DSUF ¶ 28, the Court finds a portion of the fact is supported by the cited evidence, but the statement "despite a direct request from a Privacy Officer" is not supported and the Court will not consider it.  Finally, as to DSUF ¶ 35, the Court finds portions of the fact is supported by the cited evidence: "At the time, Plaintiff, as an outpatient pharmacist;" and "could not be properly supervised or evaluated [by] the inpatient pharmacy supervisor."

The Court overrules Plaintiff's objections to DSUFs ¶¶ 7, 12, 40, and 41.

**B.  Defendant's Objections**

Defendant objects to portions of the Maureen Uche-Uwakwe Declaration.

Defendant objects to paragraph 2 of the Uche-Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (See Def. Evid. Obj. at 1.)  The Court sustains

1   Defendant's relevance objection as to the following
2   portion of paragraph 2 and finds this portion
3   inadmissible: "My first line supervisor at the ... apply
4   for a permanent, full-time pharmacist."  The Court
5   overrules Defendant's remaining objections to this
6   paragraph.

7

8       Defendant objects to paragraph 3 of the Uche-Uwakwe
9   Declaration on the basis of relevance, undue prejudice,
10  speculation, and lacks foundation.  (See Def. Evid. Obj.
11  at 1-2.)  The Court sustains Defendant's relevance
12  objection as to the following portion of paragraph 3 and
13  finds this portion inadmissible: "I was trained as an
14  inpatient pharmacist ... Monday through Friday."  The
15  Court overrules Defendant's remaining objections to this
16  paragraph.

17

18      Defendant objects to paragraph 4 of the Uche-Uwakwe
19  Declaration on the basis of relevance, undue prejudice,
20  hearsay, and that the assertions contained therein are
21  outside the scope of the EEO complaints that gave rise to
22  the present action.  (See Def. Evid. Obj. at 2.)  The
23  Court overrules Defendant's objections to this paragraph.

24

25      Defendant objects to paragraph 14 of the Uche-Uwakwe
26  Declaration on the basis that Plaintiff did not lay
27  sufficient foundation for her assertion that she "know[s]
28

1  you can be disciplined or lose your job if you are AWOL,

2  especially for that long a time." (See Def. Evid. Obj.

3  at 2-3.)  Although Plaintiff did not expressly identify

4  her basis for this understanding, the Court overrules the

5  objection because Plaintiff has been employed at LLVAMC

6  for over ten years and this information reasonably falls

7  within the purview of employees, especially long term

8  employees such as Plaintiff.  Defendant did not object to

9  Plaintiff's assertion in this paragraph about the

10  statement made to Plaintiff by Maryann Chamberlain,

11  identified as a payroll supervisor. (See Uche-Uwakwe

12  Decl. at ¶ 14 ("Ms Chamberlain advised me ... had been

13  for approximately one month.").)  The Court nevertheless

14  finds this statement admissible for its non-hearsay

15  purpose of effect on the listener.  See Fed. R. Evid.

16  801(c)(2); United States v. Payne, 944 F.2d 1458, 1472

17  (9th Cir. 1991).  The statement is not admissible for the

18  truth of the matter asserted.

19

20      Defendant objects to paragraph 17 of the Uche-Uwakwe

21  Declaration on the basis that it lacks personal

22  knowledge, contains hearsay, is irrelevant, and unduly

23  prejudicial. (See Def. Evid. Obj. at 3.)  The Court

24  sustains Defendant's hearsay and lack of personal

25  knowledge objections and finds the entire paragraph

26  inadmissible.

27

28

1    Defendant objects to paragraph 18 of the Uche-Uwakwe
2    Declaration on the basis that it lacks personal
3    knowledge, contains speculation, hearsay, and improper
4    lay opinion, is irrelevant and unduly prejudicial, and
5    that the assertions contained therein are outside the
6    scope of the EEO complaints that gave rise to the present
7    action.  (See Def. Evid. Obj. at 4.)  The Court sustains
8    Defendant's lack of personal knowledge and speculation
9    objections as to the following inadmissible assertion:
10   "Ms. Dahlan and Dr. Kawahara also encouraged Mr. Anthony
11   Fazio to falsify a Report of Contact against me."  The
12   Court overrules Defendant's remaining objections to this
13   paragraph.

14

15   Defendant objects to paragraph 20 of the Uche-Uwakwe
16   Declaration on the basis that it lacks personal knowledge
17   and foundation, contains hearsay, mischaracterizes a
18   document that speaks for itself, and lacks authentication
19   for the attached Exhibit G.  (See Def. Evid. Obj. at 4-
20   5.)  The Court sustains Defendant's lack of personal
21   knowledge and foundation objections as to the following
22   portions of the paragraph which the Court considers
23   inadmissible: "After intervention ... and substitute then
24   with LWOP" and "Dr. Kawahara issued his own email ... by
25   EEO Program Specialist Tana Moreland."[6]  Moreover, the

26   _____

27       [6]    "Email" is shorthand for electronic mail, which
     is a method of exchanging digital messages from an author
28                                        (continued...)

1  Court sustains Defendant's authentication objection to
2  portions of Plaintiff's Exhibit G, as Plaintiff did not
3  write or receive the email dated June 4, 2009 from
4  Kawahara or the email dated June 19, 2009 from Samina
5  Sam, and Plaintiff cannot attest to those emails'
6  authenticity.  <u>See</u> <u>Orr</u>, 285 F.3d at 774 ("a document can
7  be authenticated [under Rule 901(b)(1)] by a witness who
8  wrote it, signed it, used it, or saw others do so."
9  (internal quotations and citations omitted)).
10 Accordingly, the Court does not find those portions of
11 Plaintiff's Exhibit G admissible.  The Court overrules
12 Defendant's remaining objections to this paragraph.

13

14      Defendant objects to paragraph 21 of the Uche-Uwakwe
15 Declaration on the basis that it lacks personal knowledge
16 and foundation, contains hearsay, mischaracterizes a
17 document that speaks for itself, and lacks authentication
18 for the attached Exhibit G.  (<u>See</u> Def. Evid. Obj. at 5-
19 6.)  The Court sustains Defendant's lack of foundation
20 and personal knowledge objections to the following
21 portion of the paragraph, which the Court finds
22 inadmissible: "Dr. Kawahara's email ... at their own
23 facility."  As stated <u>supra</u>, the Court has already
24 sustained Defendant's authentication objection to the

25

26

27      [6](...continued)
28 to one or more recipients.

relevant portions of Plaintiff's Exhibit G.  The Court
overrules the remaining objections to this paragraph.

Defendant objects to paragraph 22 of the Uche-Uwakwe
Declaration on the basis that it lacks personal knowledge
and foundation, contains hearsay, mischaracterizes a
document that speaks for itself, and lacks authentication
for the attached Exhibit G.  (See Def. Evid. Obj. at 6-
7.)  Again, as stated supra, the Court has already
sustained Defendant's authentication objection to the
relevant portions of Plaintiff's Exhibit G.  The Court
overrules Defendant's hearsay objections as to the
statements made by Cory Werdebaugh because her
Declaration filed in support of the Motion provides
sufficient foundation regarding her position and job
responsibilities that show she could be considered an
agent of Defendant for purposes of finding her statements
in this regard to be vicarious admissions.  See Fed. R.
Evid. 801(d)(2)(D); see also Woodman v. Haemonetics
Corp., 51 F.3d 1087, 1094 (1st Cir. 1995) (nature of
declarant's position within organization used to
determine whether or not her statement is admissible as
organization's vicarious admission); Johnson v. Weld
County, Colo., 594 F.3d 1202, 1208-09 (10th Cir. 2010)
(employee's statement considered admission against
employee if "the employee was involved in the decision-
making process affecting the employment action at

1  issue"); cf. Jacklyn v. Schering-Plough Healthcare Prod.

2  Sales Corp., 176 F.3d 921, 927-28 (6th Cir. 1999)

3  (statement made by defendant's district manager who was

4  not plaintiff's direct supervisor and was not involved in

5  negative appraisals of plaintiff's performance was not

6  within scope of agency or employment).  Moreover, the

7  statements at issue were made during Werdebaugh's

8  employment, concerned matters within the scope of her

9  employment relationship, i.e., human resources matters

10 concerning an employee dispute, and Plaintiff is offering

11 these statements against Defendant; the statements are

12 not hearsay and are admissible.  See Fed. R. Evid.

13 801(d)(2)(D); see also McDonough v. City of Quincy, 452

14 F.3d 8, 21 (1st Cir. 2006) ("The relevant inquiry [for

15 purposes of Federal Rule of Evidence 801(d)(2)(D)] is

16 whether the employee's statement was made within the

17 scope of employment.").

18

19     The Court sustains Defendant's hearsay objection as

20 to the statements made by Sam Maze contained in paragraph

21 22 and finds the following statement inadmissible: "EEO

22 Manager, Sam Maze advised me that I should confirm in

23 writing that it would be temporary."  Plaintiff provides

24 the Court only with Maze's job title, which is ambiguous

25 as to his responsibilities and job duties.  In doing so,

26 Plaintiff has not met her burden to provide evidence that

27 Maze can be considered an agent of Defendant or that his

28

1   statement was made within the scope of his employment,

2   sufficient to impute this statement as a non-hearsay

3   admission against Defendant.  See United States v. Chang,

4   207 F.3d 1169, 1176 (9th Cir. 2000) (proponent of the

5   evidence has the burden to demonstrate its

6   admissibility); Bourjaily v. United States, 483 U.S. 171,

7   176 (1987) (applying preponderance of the evidence

8   standard to evaluation of evidence proffered as

9   admissible under Federal Rule of Evidence 801(d)(2));

10  United States v. Bonds, 608 F.3d 495, 507 (9th Cir.

11  2010).  The Court overrules the remaining objections to

12  this paragraph.

13

14      Defendant objects to paragraph 33 of the Uche-Uwakwe

15  Declaration on the basis that it lacks foundation for

16  Plaintiff's assertion that her "privacy was violated."

17  (See Def. Evid. Obj. at 7-8.)  The Court overrules the

18  objection.

19

20      Defendant objects to paragraph 35 of the Uche-Uwakwe

21  Declaration on the basis that it lacks foundation and

22  misstates Plaintiff's prior testimony "regarding the date

23  AWOL designation was changed to LWOP."  (See Def. Evid.

24  Obj. at 8.)  The Court overrules the objections.  In

25  fact, Defendant's objection about the misstatement of

26  Plaintiff's prior testimony is misplaced, as this

27  paragraph of the Declaration does not contain any

28

1   assertions regarding when Plaintiff's AWOL designation
2   was changed to LWOP.  (See Uche-Uwakwe Decl. ¶ 35.)

3

4       Defendant objects to paragraph 41 of the Uche-Uwakwe
5   Declaration on the basis that it lacks personal knowledge
6   and foundation and contains hearsay.  (See Def. Evid.
7   Obj. at 8-9.)  The Court overrules Defendant's objections
8   to this paragraph.  Although Plaintiff did not provide
9   the Court with Samineh Sam's job responsibilities, she
10  indicated Sam's job title was the "outpatient
11  supervisor."  The Court infers from Sam's job title that
12  her statements to Plaintiff describing the staffing in
13  the outpatient pharmacy were made within the scope of her
14  employment and are not hearsay.  See Fed. R. Evid.
15  801(d)(2)(D).

16

17      Defendant objects to paragraph 42 and 43 of the Uche-
18  Uwakwe Declaration on the basis of relevance, undue
19  prejudice, and that the assertions contained therein are
20  outside the scope of the EEO complaints that gave rise to
21  the present action.  (See Def. Evid. Obj. at 9-10.)
22  First, the following statement contained in paragraph 42
23  is inadmissible hearsay and the Court will not consider
24  it: "and with the agreement of management at the
25  recommendation of the Administrative Board of
26  Investigation."  The Court sustains Defendant's relevance
27  objection as to the following portions of paragraphs 42

28

1  and 43 which is inadmissible: "I tried several times ...
2  of other pharmacy employees" (paragraph 42); and "Ms.
3  Church-Harris insulted me ... and the Associate Director
4  regarding her harassment of me" (paragraph 43).  The
5  remaining portions of paragraphs 42 and 43 are relevant
6  to Plaintiff's claim for retaliation here, as they
7  demonstrate the impact of her reassignment in February
8  2010 to the outpatient pharmacy which would have required
9  her to work with individuals with whom she had concerns
10 due to their past interactions.  (See Uche-Uwakwe Decl.
11 ¶¶ 42, 43.)

12

13     The Court finds, however, the remaining assertions in
14 paragraphs 42 and 43 to be irrelevant and unduly
15 prejudicial, as this Court has entered summary judgment
16 against Plaintiff on her claims for hostile work
17 environment arising from those interactions with the
18 outpatient pharmacy staff in a related action, resulting
19 in final judgment on the merits, which the Ninth Circuit
20 has affirmed.  See Uche-Uwakwe v. Nicholson, No.
21 5:05CV983(VAP) (C.D. Cal. Mar. 30, 2010); Uche-Uwakwe v.
22 Nicolson, 473 Fed. Appx. 544 (9th Cir. Mar. 30, 2012)
23 (finding plaintiff failed to raise a triable issue of
24 fact as to her claims for failure to promote and hostile
25 work environment, but finding she raised a triable issue
26 of fact as to her claim for disparate treatment and
27 retaliation).  The assertions contained in this paragraph
28

concern the same "transactional nucleus of facts" as the Court has previously determined on the merits in the related litigation.  Constantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982) (finding subsequent claim brought on the same cause of action that had previously been determined in a final judgment on the merits to be barred by doctrine of res judicata). Moreover, the parties to the related action are the same as here and the factual basis for Plaintiff's hostile work environment claim concern the same facts as those previously adjudicated in the related action.  See Blonder-Tongue Lab. v. Univ. of Ill., Found., 402 U.S. 313, 323-24 (1971) (discussing three factors necessary for res judicata to apply, i.e., identity of claims, final judgment on the merits, and identity or privity between parties).  Accordingly, these assertions are not admissible here, as they are barred by the doctrine of res judicata.  See Western Radio Serv. Co., Inc. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997) ("Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action").

Defendant objects to paragraph 44 of the Uche-Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present

action.   (See Def. Evid. Obj. at 11.)   The Court
overrules Defendant's objections, but finds the following
portions to be inadmissible hearsay, as Plaintiff fails
to demonstrate that any statements quoting investigation
materials or statements made by the Administrative Board
of Investigation are admissible: "Dr. Kawahara had
charged that I altered ... Although I was exonerated;"
and, "It took five months ... given diversity training."

Defendant objects to paragraph 51 of the Uche-Uwakwe
Declaration on the basis of relevance, undue prejudice,
that the assertions contained therein are outside the
scope of the EEO complaints that gave rise to the present
action, and misstates a document that speaks for itself.
(See Def. Evid. Obj. at 11-12.)   The Court overrules
Defendant's objections to this paragraph.   Although some
of the assertions contained in this paragraph concern
events preceding the filing of the EEO complaints at
issue here, the assertions are directly relevant to
Plaintiff's claim of unlawful retaliation and provide
necessary evidentiary context to her claim.

Defendant purports to object to portions of paragraph
52 of the Uche-Uwakwe Declaration, but fails to
articulate any bases for his objection.   Accordingly, the
Court will not rule on objections not properly before the
Court.

Defendant objects to paragraph 56(a)-(d) of the Uche-Uwakwe Declaration on the basis of relevance, undue prejudice, and that the assertions contained therein are outside the scope of the EEO complaints that gave rise to the present action. (See Def. Evid. Obj. at 13.) The Court overrules Defendant's objections as to paragraph 56(a), (c), and (d) as none of these sub-paragraphs contain information previously litigated before this Court in a related action. The Court sustains Defendant's relevance and undue prejudice objections to paragraph 56(b), however, because it contains factual assertions already adjudicated by this Court and affirmed by the Ninth Circuit in a related action. See Uche-Uwakwe v. Nicholson, No. 5:05CV983(VAP) (C.D. Cal. Mar. 30, 2010); Uche-Uwakwe, 473 Fed. Appx. 544 (9th Cir. Mar. 30, 2012). As discussed supra, these assertions are barred by res judicata. See Glickman, 123 F.3d at 1192. The Court overrules Defendant's remaining objections to this paragraph.

## C.   Other Evidentiary Issues

As stated supra, the Court can "only consider admissible evidence in ruling on a motion for summary judgment." See Orr, 285 F.3d at 773; Cristobal v. Siegel, 26 F.3d 1488, 1494 (9th Cir. 1994); Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987).

**1.   Defendant's Evidence**

In its independent review of the admissibility of the evidence proffered by Defendant, the Court has found the following issues:

DSUF ¶ 6:  The following portion is not supported by the cited evidence and the Court will not consider it: "in May 2009."

DSUF ¶ 8:  The following portion is not supported by the cited evidence and the Court will not consider it: "for the days between May 5, 2009 and June 2, 2009."

DSUF ¶ 12:  It appears the word "employee" is missing after "then a Loma Linda VAMC."  The Court construes this fact to contain the missing word for completeness.

DSUF ¶ 17:  The following portion is not supported by the cited evidence and the Court will not consider it: "the removal of the EEO file constituted a violation of Loma Linda VAMC's privacy policies."

DSUF ¶ 18:  This fact is not supported by sufficient evidence, as the Court has found the cited Werdebaugh Declaration testimony to be inadmissible hearsay, and the testimony cited from Defendant's Exhibit 10 provides no

context about the topic of the witness's testimony
sufficient to lay requisite foundation.

   <u>DSUF ¶ 24</u>:   The cited evidence does not support the
factual assertion made herein and the Court will not
consider it.

   <u>DSUF ¶ 30</u>:   The following portion is not supported by
the cited evidence and the Court will not consider it:
"that would have to be reported in a privacy breach
notification database."

   <u>DSUF ¶ 36</u>:   The cited evidence does not support the
factual assertion made herein and the Court will not
consider it.

   <u>DSUF ¶ 37</u>:   The following portion is not supported by
the cited evidence and the Court will not consider it:
"for anxiety."   In addition, there appears to be a
typographical error contained in this fact; it appears
"Monday, February 15, 2013" should instead read "Monday,
February 15, 2010."

   For the foregoing reasons, the Court does not
consider the following DSUFs to be sufficiently supported
by admissible evidence and the Court will not consider
them for purposes of deciding this Motion: DSUF ¶¶ 14,

18, 19, 24, 31, 33, 34, and 36.  Moreover, the Court considers only portions of the following DSUFs, for the reasons stated above: DSUF ¶¶ 3, 6, 8, 17, 28, 30, and 37.

**2.  Plaintiff's Evidence**

In its independent review of the admissibility of the evidence proffered by Plaintiff, the Court has found the following issues:

<u>Uche-Uwakwe Decl. ¶ 26</u>: The following statement is inadmissible hearsay and the Court will not consider it: "My doctor also suggested that I see psychological counseling."  In addition, the following statement lacks foundation and is not admissible: "He filled out a disability form ... was also without pay."

<u>Uche-Uwakwe Decl. ¶ 27</u>: The following statement is inadmissible hearsay and the Court will not consider it: "Meanwhile, I learned from talking to pharmacists and management at other VA facilities ... or temporary shift changes."

<u>Uche-Uwakwe Decl. ¶ 35</u>: The following statement is inadmissible speculation and the Court will not consider it: "Dr. Sam knew what outpatient work I was performing ... conducted my performance reviews."

1    <u>Uche-Uwakwe Decl. ¶ 47</u>: The following statement is

2    inadmissible hearsay and the Court will not consider it:

3    "At my primary physician's recommendation."

4

5    <u>Uche-Uwakwe Decl. ¶ 49 & Plaintiff's Exhibits N and

6    O</u>:  The following statements lack foundation and personal

7    knowledge and the Court will not consider them: "On March

8    26, 2010, my treating physician ... letter is attached as

9    Exhibit O."  Moreover, Plaintiff's Declaration testimony

10   contained in this paragraph cannot provide sufficient

11   authentication for Plaintiff's Exhibits N and O

12   (purportedly letters from her treating physicians), as

13   she does not attest to writing them, signing them, using

14   them, seeing others use them, or receiving them.  <u>See</u>

15   <u>Orr</u>, 285 F.3d at 774; Fed. R. Evid. 901(b)(1).

16

17   <u>Uche-Uwakwe Decl. ¶ 56(c)</u>:  The following statement

18   is inadmissible hearsay: "Ms. Connie Morrison ... as

19   ordered by my doctor."  <u>See</u> Fed. R. Evid. 801(d)(2)(D).

20   Plaintiff has not provided evidence that Morrison's

21   statements are admissible here.  <u>See</u> <u>Chang</u>, 207 F.3d at

22   1176.

23

24   <u>Uche-Uwakwe Decl. ¶ 56(d)</u>:  The following statement

25   is inadmissible hearsay: "Mr. Maze reminded him that I

26   was on disability and to cease the harassment."  As

27   stated <u>supra</u>, Plaintiff has not met her burden to provide

28

evidence that Maze's statements are admissible.  <u>See</u>
<u>Chang</u>, 207 F.3d at 1176; <u>Bourjaily</u>, 483 U.S. at 176;
<u>Bonds</u>, 608 F.3d at 507; Fed. R. Evid. 801(d)(2)(D).

   <u>PSUF ¶ 2</u>:  The following portion is unsupported by
the cited evidence and the Court will not consider it:
"Plaintiff had no problems at work until."

   <u>PSUF ¶¶ 18, 23, 26</u>:  Exhibit 17 to the Werdebaugh
Deposition does not support these PSUFs as the document
lacks requisite authentication and cannot be considered
by the Court.  <u>See</u> Fed. R. Evid. 901(b); <u>Orr</u>, 285 F.3d at
774.  The other cited evidence supports these facts
sufficiently.  As to PSUF ¶ 26, however, the cited
Werdebaugh deposition testimony does not support the
factual assertion made therein, but the remaining
evidentiary support cited, <u>i.e.</u>, the Uche-Uwakwe
Declaration, sufficiently supports the factual assertions
contained in PSUF ¶ 26.

   <u>PSUF ¶ 36</u>:  The following portion is unsupported by
the cited evidence and the Court will not consider it:
"and told another of Plaintiff's supervisors, Elisa
Almera, that Plaintiff ... to Plaintiff's EEO activity."
The cited Maze testimony does not support the factual
assertions contained in this fact.

PSUF ¶¶ 39, 40, 54, 94, 101:  The cited evidence does
not support these facts and the Court will not consider
them.

PSUF ¶ 41:  The cited Kawahara deposition testimony
does not support this factual assertion; the other cited
evidence, however, sufficiently supports this fact.

PSUF ¶ 51:  The following portion contains
inadmissible hearsay and the Court will not consider it:
"Plaintiff's doctor suggested that she seek psychological
counseling."

PSUF ¶ 55:  This fact is duplicative of PSUF ¶ 35.

PSUF ¶¶ 56, 57:  These facts contain statements made
by Edna Dahlan to Plaintiff which ordinarily would be
considered inadmissible hearsay.  The Court infers,
however, from Dahlan's title as the inpatient supervisor,
that her statements to Plaintiff about scheduling a
meeting were within the scope of her employment and are
not hearsay.  See Fed. R. Evid. 801(d)(2)(D).

PSUF ¶ 59:  This fact contains statements made to
Plaintiff by a canteen employee, which ordinarily would
be considered inadmissible hearsay.  The Court infers,
however, from the employee's title that the statements to

1  Plaintiff about the location of her EEO file were made
2  within the scope of the employee's employment and are not
3  hearsay.  See Fed. R. Evid. 801(d)(2)(D).

4

5      PSUF ¶¶ 67-68, 70:  These facts contain hearsay
6  statements made by Craig Curtis, an information security
7  officer.  Plaintiff has not met her burden to provide the
8  Court with evidence of Curtis's job duties to demonstrate
9  that his statements are not hearsay and were made within
10 the scope of his employment.  See Chang, 207 F.3d at
11 1176.  Plaintiff's counsel argued at the hearing on the
12 Motion that the Court should infer from the facts that
13 Curtis called the February 12, 2010 meeting and had the
14 apparent authority to issue Plaintiff a privacy violation
15 ticket that Curtis was employed by LLVAMC and that his
16 statements made were within the scope of his employment.
17 The Court disagrees.  Viewing all the admissible evidence
18 submitted by both parties, the record before the Court
19 contains no information about whether or not Curtis was
20 employed by LLVAMC and whether or not his statements were
21 made within the scope of his employment with LLVAMC.
22 Accordingly, the Court does not find Curtis's statements
23 to Plaintiff during the February 12, 2010 meeting to be
24 relevant to her claims here, as Plaintiff has not met her
25 burden to establish, as necessary foundation, that Curtis
26 was employed at LLVAMC when he made the statements.

27

28

As to PSUF ¶ 68, the cited Kawahara deposition testimony at 144:11-145:1, 145:9-20 and the Dahlan deposition testimony at 107:9-108:4 do not support the contention in this fact, but the other cited evidence sufficiently supports it.

As to PSUF ¶ 70, the cited evidence does not support the inclusion of "and Dr. Kawahara" in this fact. Moreover, the Kawahara testimony cited does not support the factual assertions contained in this fact.

PSUF ¶ 77: The cited evidence, i.e., Exhibit 35 to the Werdebaugh deposition, lacks necessary authentication and cannot be considered by the Court. See Fed. R. Evid. 901(b); Orr, 285 F.3d at 774. Accordingly, the Court will not consider this fact.

PSUF ¶ 79: The following statement is inadmissible hearsay and the Court will not consider it: "at her primary care physician's recommendation."

PSUF ¶ 82: As discussed supra, the cited evidence, i.e., Exhibit 35 to the Werdebaugh deposition, lacks necessary authentication and cannot be considered by the Court. See Fed. R. Evid. 901(b); Orr, 285 F.3d at 774. Accordingly, the Court will not consider this fact, as it is not supported by admissible evidence.

1   PSUF ¶¶ 86-93:  These facts contain improper legal

2   conclusions and argument, instead of statements of fact

3   supported by admissible evidence.  The Court will not

4   consider the improper conclusions and arguments contained

5   in these facts.

6

7   PSUF ¶ 96:  This fact is irrelevant and contains

8   inadmissible hearsay.  Accordingly, the Court will not

9   consider this fact.

10

11   PSUF ¶ 98:  The cited Uche-Uwakwe Declaration

12   testimony does not support this fact, as the testimony

13   lacks foundation; the Court, however, finds the other

14   cited evidence sufficiently supports this fact.

15

16   PSUF ¶ 103:  The following statement is inadmissible

17   hearsay and the Court will not consider it: "caused by

18   work-related stress and anxiety."

19

20   PSUF ¶ 104:  This fact contains only inadmissible

21   hearsay and the Court will not consider it.

22

23   PSUF ¶ 107:  All of the cited evidence, except for

24   paragraph 56 of the Uche-Uwakwe Declaration, does not

25   support the assertions contained in this fact.  Moreover,

26   the the following statements are unsupported by the cited

27   evidence and the Court will not consider them: "There is

28

substantial evidence on which a trier of fact could find
that;" "and that he has failed and refused to investigate
Plaintiff's claims of harassment;" and "promoting non-
Blacks who were less qualified than Plaintiff."

For the foregoing reasons, the Court does not
consider the following PSUFs to be sufficiently supported
by admissible evidence and the Court will not consider
them for purposes of deciding this Motion: PSUF ¶¶ 39,
40, 54, 55, 75, 76, 82, 94, 96, 101, and 104.  Moreover,
the Court considers only portions of the following PSUFs,
for the reasons stated above: PSUF ¶¶ 2, 36, 51, 67-68,
70, 79, 86-93, and 107.

## IV. UNCONTROVERTED FACTS

The following material facts are supported adequately
by admissible evidence and uncontroverted.  They are
"admitted to exist without controversy" for the purposes
of this Motion.  <u>See</u> Local Rule 56-3.

Plaintiff has worked as a pharmacist at the LLVAMC
since 1999.  (DSUF ¶ 1; PSUF ¶ 1.)  Dr. Brian Kawahara
("Kawahara") has been the Chief of Pharmacy Services at
LLVAMC since approximately September 2000. (PSUF ¶ 2.)

**A.   Pharm. D. Degree Clinical Rotations**

In July 2001, Kawahara told Plaintiff that one of the reasons why he did not select her for a promotion to a GS-12 clinical pharmacist position was because she did not have a Pharm. D. degree.  (PSUF ¶ 4.)  Although it was not a requirement of her job as a pharmacist at LLVAMC, Plaintiff decided to enroll in a Pharm. D. degree program through the University of Kansas to improve her chances of getting a promotion in the future.  (PSUF ¶ 5; DSUF ¶¶ 3, 4.)  In order to obtain the Pharm. D. degree, Plaintiff was required to complete several clinical rotations. (PSUF ¶ 9.) Plaintiff arranged to complete a clinical rotation at LLVAMC, after she worked with the Associate Chief of Staff of Education, Dr. John Byrne, to execute an "Affiliation Agreement" between LLVAMC and the University of Kansas in February 2009. (PSUF ¶ 10-11.)

Plaintiff's direct supervisor, Edna Dahlan, approved Plaintiff for one day, or eight hours, of leave per week beginning February 5, 2009 for Plaintiff's clinical rotation.  (PSUF ¶ 6.)  Per Plaintiff's Clerkship Guide for the Pharm. D. degree program, clinical rotations were required to be completed within four months.  (PSUF ¶ 19.)  In March 2009, Plaintiff realized that she would be unable to complete her rotation by her school's deadline at the rate of eight hours of clinical rotation per week. (PSUF ¶ 7.)

1   Having exhausted her annual leave, Plaintiff
2   submitted to Dahlan a request for Leave Without Pay
3   ("LWOP") for 40 hours per week, so she could complete her
4   rotation that began in February 2009 by the end of April
5   2009.  (PSUF ¶¶ 8, 12.)  LWOP is an unpaid, approved
6   absence that may be used instead of paid leave, but
7   requires supervisory approval in advance.  (DSUF ¶ 9.)
8   Approval of LWOP is a matter of administrative
9   discretion.  (DSUF ¶ 10.)  LLVAMC employees were
10  permitted to submit LWOP requests for educational
11  purposes.  (DSUF ¶ 11.)  If the request for LWOP was for
12  a period exceeding 30 consecutive calendar days, then the
13  LLVAMC employee was required to submit a written
14  memorandum for the request, along with supporting
15  documentation to her service chief.  (DSUF ¶ 12.)  The
16  AFGE Master Agreement provides that LWOP is not
17  discretionary "when requested by an employee who has
18  suffered an incapacitating job-related injury or illness
19  and is waiting adjudication of a claim for employee
20  compensation by the Office of the Workers' Compensation
21  Program ...."  (PSUF ¶ 102.)

22

23   Plaintiff's request for LWOP required approval by
24  Kawahara.  (PSUF ¶ 8.)  Plaintiff followed up with
25  Kawahara to determine the status of her request for LWOP,
26  and he stated he could not approve her request because
27  she sought over 30 days of LWOP and that her request had
28

1   to be approved by the Associate Director.  (PSUF ¶ 16.)
2   Kawahara was under the impression that Plaintiff was
3   going to complete her clinical rotation by the end of
4   April 2009.  (DSUF ¶ 7.)  Kawahara did not ask Plaintiff
5   for any documentation to substantiate her request at that
6   time.  (PSUF ¶ 22.)  Plaintiff then inquired of the
7   acting Associate Director about her request for LWOP and
8   was told that pharmacy management would only allow eight
9   hours per week for the clinical rotation and advised
10  Plaintiff to speak with Human Resources in the event she
11  needed further assistance.  (PSUF ¶ 17.)  Plaintiff then
12  consulted with Human Resources, specifically Cory
13  Werdebaugh, to seek assistance with her request for LWOP
14  so she should complete her clinical rotation timely.
15  (PSUF ¶ 18-20.)  Plaintiff submitted supporting
16  documentation to Werdebaugh to Werdebaugh's satisfaction
17  that Plaintiff's involvement in the Pharm. D. program was
18  legitimate and her request for LWOP was justified.  (See
19  Curd Decl., Exs. V-15 to V-19, 98:13-102:22; V-27,
20  139:19-140:5; X-12, 331:1-9.)
21
22      On April 13, 2009, Werdebaugh informed Plaintiff that
23  she had worked with Kawahara and he agreed to allow
24  Plaintiff 16 hours of LWOP per week so she could complete
25  her clinical rotation on time.  (PSUF ¶ 23; DSUF ¶¶ 5,
26  6.)  Plaintiff's resulting schedule was that she worked
27  as a paid pharmacist on Mondays, Wednesdays, and Fridays,
28

1   and performed her clinical rotation at LLVAMC on Tuesdays
2   and Thursdays in LWOP status.  (PSUF ¶ 24.)

3

4       On June 3, 2009, Plaintiff requested to switch her
5   last clinical rotation day (Thursday, June 4, 2009) to
6   Friday, June 5, 2009 because her preceptor would not be
7   available that Thursday to complete Plaintiff's
8   evaluation.  (PSUF ¶ 25.)  Kawahara required Plaintiff to
9   submit supporting documentation for her leave request
10  before he would approve her request to switch her regular
11  LWOP clinical rotation day with her paid work day.[7]
12  (PSUF ¶ 26.)

13

14      Without providing advance notice to Plaintiff or
15  Human Resources, Kawahara designated Plaintiff as Absent
16  Without Leave ("AWOL") from the beginning of May 2009
17  through June 2009.  (DSUF ¶ 8; PSUF ¶¶ 27-29, 34.)
18  Plaintiff had only been taking the leave which had been
19  approved during that time.  (PSUF ¶ 31.)  AWOL status is
20  an unapproved unpaid absence designation and is not a
21  disciplinary action, but can be used to support a
22  disciplinary action.  (DSUF ¶¶ 15-16.)  Plaintiff
23  complained to Kawahara via email and copied her direct

24  _____

25      [7]  The parties do not submit admissible evidence to
    demonstrate whether or not Plaintiff was allowed
26  ultimately to switch her shift and complete her clinical
    rotation on June 5, 2009.  It appears to the Court, based
27  on the totality of the admissible evidence submitted,
    however, that Plaintiff was able to complete her clinical
28  rotation timely.

1  supervisor, an EEO manager, and a payroll supervisor
2  about this designation.  (DSUF ¶ 13; PSUF ¶¶ 32-34.)
3  Human Resources mediated the dispute and Kawahara changed
4  Plaintiff's AWOL status to LWOP status shortly
5  thereafter.  (DSUF ¶ 13; PSUF ¶ 44.)

6

7      In June 2009, Werdebaugh informed Plaintiff that
8  pharmacy management would not authorize LWOP for
9  Plaintiff to perform clinical rotations either at the
10  LLVAMC or at another facility.  (PSUF ¶ 45.)  This
11  required Plaintiff to complete her clinical rotations
12  during evenings and weekends at other facilities.  (Id.)
13  Werdebaugh offered to switch Plaintiff's shift at LLVAMC
14  to graveyard or weekends, but Plaintiff declined because
15  she believed the shift change would have been permanent.
16  (DSUF ¶ 21; PSUF ¶¶ 46-47.)

17

18      Around June 2009, Kawahara approved an externship for
19  Derek Abrams, a clerk in the Pharmacy Services department
20  at LLVAMC, to be completed at the LLVAMC pharmacy.  (Curd
21  Decl., Ex. W-11, 12; Reply at 7 n.6 ("It is undisputed
22  that another Loma Linda pharmacy employee was allowed to
23  conduct an externship for a technician license ... at
24  Loma Linda VAMC.")  Abrams completed his externship at
25  LLVAMC during evenings and weekends, outside of his
26  scheduled work shifts.  (See Supp. Cameron-Banks Decl.,
27  Ex. 14 at 182:2-22.)

28

Plaintiff filed an EEO complaint against Kawahara on August 24, 2009, complaining about his designation of her leave status as AWOL.  (PSUF ¶ 48.)

Plaintiff experienced panic attacks and anxiety and she requested LWOP pursuant to the Family Medical Leave Act ("FMLA") in September 2009.  (DSUF ¶ 22; PSUF ¶ 50.)  Plaintiff's request was granted and she did not return to work until October 21, 2009.  (DSUF ¶ 23; PSUF ¶¶ 50, 53.)  Plaintiff completed her Pharm. D. degree clinical rotations off-site in December 2009.  (PSUF ¶ 53.)

## B.  Plaintiff's EEO Claim Folder

On February 10, 2010, a LLVAMC EEO manager inadvertently left Plaintiff's EEO file in the LLVAMC canteen.  (DSUF ¶ 25.)  Plaintiff was alerted that her file was left in the canteen and she retrieved it.  (DSUF ¶ 26; PSUF ¶¶ 59, 60.)  Plaintiff reviewed the file's contents and found it contained her pending EEO claim filed August 22, 2009.  (PSUF ¶ 60.)  Plaintiff contacted her EEO representative and arranged to give the folder to her representative to give to her lawyer.  (PSUF ¶ 61.)

The following day, Plaintiff received an email dated February 10, 2010 from Diana Gellentien, the acting EEO manager, telling her Gellentien had accidentally left Plaintiff's EEO folder in the canteen and asking

1  Plaintiff to return it.   (DSUF ¶ 27; PSUF ¶ 62.)
2  Plaintiff replied that her attorney had the folder and
3  that he would be contacting the VA director and the VA's
4  counsel because of the privacy breach.   (PSUF ¶ 63.)
5  Plaintiff did not receive a response to her email.   (PSUF
6  ¶ 64.)
7
8      On February 12, 2010, while Plaintiff was in the mail
9  room of the pharmacy at LLCAMC, Kawahara ordered her to
10 go with him to Dahlan's office and escorted her there.
11 (PSUF ¶ 65.)   When Plaintiff arrived at Dahlan's office
12 with Kawahara, Craig Curtis, an information security
13 officer, and Dahlan were present.   (PSUF ¶ 66.)   At the
14 meeting, Plaintiff explained that she had not obtained
15 her file illegally and she would deliver the file back to
16 LLCAMC once she was able to speak with her attorney.
17 (PSUF ¶ 69.)
18
19     After the meeting was over, Plaintiff attempted to
20 leave Dahlan's office but Kawahara closed the door and
21 told her to stay behind with Dahlan.   (PSUF ¶ 72.)
22 Kawahara gave Plaintiff a memorandum notifying her of a
23 reassignment to the outpatient pharmacy.   (DSUF ¶ 32;
24 PSUF ¶ 73.)   The reason Kawahara gave for the transfer
25 was that the outpatient department was understaffed.
26 (PSUF ¶ 74.)   Sam told Plaintiff that the outpatient
27 pharmacy was not understaffed at that time and that no
28

one had consulted her about transferring Plaintiff to the outpatient pharmacy.  (PSUF ¶ 75.)

Plaintiff timely returned her EEO file to Curtis. (PSUF ¶ 71.)

Following the meeting, Plaintiff had a panic attack. (PSUF ¶ 77.)  She believed that the panic attack was triggered because in 2003 she had been transferred out of the outpatient pharmacy because of harassment by her co-workers in the outpatient pharmacy.  (Id.)  Many of the same employees Plaintiff had problems with previously were still working in the outpatient pharmacy.  (Id.) Plaintiff also believed her reassignment caused her to experience flashbacks to a 2003 investigation by the Administrative Board of Investigation ("ABOI").  (PSUF ¶ 78.)  Plaintiff attempted to return to work on February 15, 2010 but felt too overwhelmed by stress and anxiety and went back on FMLA leave.  (DSUF ¶ 37; PSUF ¶ 79.) Plaintiff remained on unpaid leave, including FMLA, LWOP, AWOL, and donated leave, from February 16, 2010 through January 31, 2012.  (Werdebaugh Decl., Ex. 4-54 to 4-69.)

On March 22, 2010, Plaintiff filed an EEO complaint regarding her EEO file being left in the canteen, her treatment during the meeting with Curtis, Kawahara, and

1  Dahlan about the file, and about her reassignment back to
2  the outpatient pharmacy.  (PSUF ¶ 80.)

3

4      **C.   Plaintiff's Request for Advanced Sick Leave**

5      Plaintiff requested advanced sick leave on March 26,
6  2010.  (PSUF ¶ 81.)  Kawahara denied the request on April
7  28 2010, stating in a letter to Plaintiff that he denied
8  the request because Plaintiff did not meet the criteria
9  for advanced sick leave and due to workload and staffing
10 requirements in the LLVAMC pharmacy.  (DSUF ¶¶ 39, 40;
11 PSUF ¶ 84.)  Kawahara also stated in the letter that the
12 leave was not justifiable given Plaintiff's continuing
13 absences.  (DSUF ¶ 41.)  Also in the letter, Kawahara
14 suggested that Plaintiff apply for a disability
15 retirement or resign.  (PSUF ¶ 85.)  This was not the
16 first time Kawahara suggested Plaintiff do so.  (Id.)
17

18     Eight criteria must be considered for approval of an
19 advanced sick leave request, according to LLVAMC policy.
20 (PSUF ¶ 86.)  Plaintiff believed she was unable to return
21 to work because of her medical condition.  (PSUF ¶ 87.)
22 Plaintiff intended to return to duty and no one at the VA
23 asked Plaintiff if she intended to do so.  (PSUF ¶¶ 83,
24 88.)  The LLVAMC Associate Director, Shane Elliott,
25 admitted there was a need for Plaintiff's services on her
26 return and that Plaintiff had not abused her leave.
27 (PSUF ¶¶ 89, 92.)  Plaintiff had worked at LLVAMC for
28

1   more than one year, and Plaintiff had been rated "fully

2   successful" by her supervisor, Dahlan.  (PSUF ¶¶ 91, 93.)

3

4        On July 14, 2010, Plaintiff filed an EEO complaint

5   for the denial of her request for advanced sick leave.

6   (PSUF ¶ 95.)

7

8        **D.   Plaintiff's Return to Work**

9        On August 5, 2011, Plaintiff advised Werdebaugh that

10  she was available to return, but the LLVAMC would not

11  allow her to return until January 3, 2012.  (PSUF ¶ 97.)

12  Although Plaintiff was available to return to work as of

13  August 5, 2011, she was designated AWOL from April 22,

14  2010 through December 30, 2011 and as LWOP from January

15  3, 2012 through January 31, 2012 when she returned to

16  work part-time.  (PSUF ¶¶ 98, 105.)  Plaintiff returned

17  to full time work at LLVAMC starting on February 1, 2012.

18  (PSUF ¶¶ 99, 105.)

19

20       Plaintiff filed a worker's compensation claim for

21  job-related stress in November 2010, which was pending

22  while she was on leave from November 2010 until after she

23  returned to work in February 2012.  (PSUF ¶ 100.)

24

25       Plaintiff was on FMLA leave from February 19, 2013

26  through April 8, 2013 due to panic attacks.  (PSUF ¶

27  106.)

28

Plaintiff is currently undergoing treatment for her psychological and physical problems.  (PSUF ¶ 103.)

**E.   Kawahara's Other Treatment of Plaintiff**

Kawahara has given preferred shifts to Asian staff rather than to Plaintiff or other non-Asian staff in the Pharmacy Services department, even after Plaintiff attained seniority.  (PSUF ¶ 107.)

Plaintiff suffered what she describes as severe emotional distress that she believes has been caused by Kawahara's treatment of her, which she believes has gotten progressively worse after each time she reported his actions to the EEO or the Human Resources department. (PSUF ¶ 108.)

**V. DISCUSSION**

Defendant moves for summary judgment, or in the alternative summary adjudication, of Plaintiff's claims for retaliation and harassment/hostile work environment, both in violation of Title VII.

By way of background, courts analyze "Title VII claims through the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792 (1973)."  Hawn v. Exec. Jet Mgmt, Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). "Under this analysis, plaintiffs must first establish a

prima facie case of employment discrimination."  Id.  To
establish a prima facie case, the plaintiff "must offer
evidence that 'give[s] rise to an inference of unlawful
discrimination.'"  Id. at 1156 (quoting Goodwin v. Hunt
Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)
(quoting Texas Dep't of Cmty. Affairs v. Burdine, 450
U.S. 248, 253 (1981))).  Alternatively, plaintiffs may
establish their prima facie case "by providing direct
evidence suggesting that the employment decision was
based on an impermissible criterion."  E.E.O.C. v. Boing
Co., 577 F.3d 1044, 1049 (9th Cir. 2009) (citing Cordova
v. State Farm Ins. Cos., 124 F.3d 1145, 1148 (9th Cir.
1997)).

    Once the plaintiff has established a prima facie
case, the burden shifts and the defendant must "provide a
legitimate, non-discriminatory reason for the employment
action."  Vasquez v. Cnty. of Los Angeles, 349 F.3d 634,
641 (9th Cir. 2003).  The defendant need offer only
reasons that, "taken as true, would permit the conclusion
that there was a non-discriminatory reason for the
adverse action."  St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 509 (1993) (emphasis in original).  The
defendant bears this burden of production but the burden
of persuasion remains with the plaintiff:  "The defendant
need not persuade the court that it was actually
motivated by the proffered reasons. . . .  It is

sufficient if the defendant's evidence raises a genuine
issue of fact as to whether it discriminated against the
plaintiff." <u>Burdine</u>, 450 U.S. at 254 (citing <u>Bd. of Trs.</u>
<u>of Keene State Coll. v. Sweeney</u>, 439 U.S. 24, 25 (1978)).

Once the defendant has provided a "legitimate, non-
discriminatory reason for the employment action," then
the burden shifts back to the plaintiff to show that this
articulated reason was "pretextual." <u>Vasquez</u>, 349 F.3d
at 641.  "A plaintiff can show pretext directly, by
showing that discrimination more likely motivated the
employer, or indirectly, by showing that the employer's
explanation is unworthy of credence." <u>Id.</u>  "To show
pretext using circumstantial evidence, a plaintiff must
put forward specific and substantial evidence challenging
the credibility of the employer's motives." <u>Id.</u>

At the summary judgment stage, "the district court
must look at the evidence supporting the <u>prima</u> <u>facie</u>
case, as well as the other evidence offered by the
plaintiff to rebut the employer's offered reasons.  And,
in those cases where the <u>prima</u> <u>facie</u> case consists of no
more than the minimum necessary to create a presumption
of discrimination under <u>McDonnell Douglas</u>, plaintiff has
failed to raise a triable issue of fact." <u>Wallis v. J.R.</u>
<u>Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1994) (clarifying
the plaintiff's burden at the summary judgment stage as

1  set forth in <u>Sischo-Nownejad v. Merced Cmty. Coll. Dist.</u>,

2  934 F.2d 1104, 1111 (9th Cir. 1993)).  "Thus, the mere

3  existence of a <u>prima facie</u> case, based on the minimum

4  evidence necessary to raise a <u>McDonnell Douglas</u>

5  presumption, does not preclude summary judgment."  <u>Id.</u>

6

7      The Court discusses each of Plaintiff's Title VII

8  claims in turn.

9

10 **A.   Retaliation**

11     Defendant argues that Plaintiff cannot establish a

12 <u>prima facie</u> case of Title VII retaliation or evidence

13 sufficient to rebut Defendant's legitimate reasons for

14 the employment decisions at issue here.  (<u>See</u> Mot. at 6-

15 11.)

16

17     Title VII prohibits adverse employment actions

18 against an employee who has "opposed any practice made an

19 unlawful employment practice by this subchapter [(Title

20 VII)]" or who has "made a charge, testified, assisted, or

21 participated in any manner in an investigation,

22 proceeding, or hearing under this subchapter."  42 U.S.C.

23 § 2000e-3.  The analysis of a retaliation case is similar

24 to that of a discrimination case under Title VII, where

25 the plaintiff must establish a <u>prima facie</u> case of

26 retaliation, then the employer must articulate a

27 legitimate, non-retaliatory reason for its action, and

28

the plaintiff must show that the employer's reason is a
pretext.  See Stegall v. Citadel Broadcasting Co., 350
F.3d 1061, 1065 (9th Cir. 2003).  The elements of a prima
facie case for retaliation are: (1) that the plaintiff
engaged in a protected activity under Title VII, (2) that
the employer subjected the plaintiff to an adverse
employment action, and (3) that a causal link exists
between the protected activity and the employer's action.
See Westendorf v. W. Coast Contractors of Nevada, Inc.,
712 F.3d 417, 422 (9th Cir. 2013); Villiarimo v. Aloho
Is. Air., Inc., 281 F.3d 1054, 1064 (9th Cir. 2002);
Passantino v. Johnson & Johnson Consumer Prods., Inc.,
212 F.3d 493, 506 (9th Cir. 2000); Yartzoff v. Thomas,
809 F.2d 1371, 1375 (9th Cir. 1987).  Plaintiff must
prove that the unlawful retaliation would not have
occurred "but for" the alleged wrongful or discriminatory
motivation.  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133
S. Ct. 2517, 2534 (2013) ("a plaintiff making a
retaliation claim under [Title VII] must establish that
his or her protected activity was a but-for cause of the
alleged adverse action by the employer").

    As he does not have the burden of proof on this issue
at trial, Defendant meets his burden on the Motion by
pointing to the absence of evidence.  Celotex, 477 U.S.
at 325.  The burden now shifts to the Plaintiff to

1  establish her prima facie retaliation claim.  Stegall,

2  350 F.3d at 1065.

3

4      **1.  Protected Activity**

5      Plaintiff presents undisputed, admissible evidence

6  that she engaged in protected activity here, by filing

7  several EEO complaints about the treatment to which she

8  was subjected by her employer.  See Raad v. Fairbanks N.

9  Star Borough Sch. Dist., 323 F.3d 1185, 1196-97 (9th Cir.

10 2003) (protected activities include filing charge or

11 complaint, providing testimony regarding employer's

12 alleged unlawful practices, and engaging in activity

13 intended to oppose employer's discriminatory practices);

14 Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007)

15 (filing EEO claims is protected activity); (PSUF ¶¶ 35,

16 37, 48, 80, 95).  Moreover, Plaintiff's evidence

17 demonstrates that she complained to Human Resources about

18 her treatment and spoke with an EEO counselor, which are

19 protected activities under Title VII.  See Dawson v.

20 Entek Intern., 630 F.3d 928, 936 (9th Cir. 2011) (meeting

21 with human resources and discussing mistreatment

22 complaint is protected activity); Hashimoto v. Dalton,

23 118 F.3d 671, 680 (9th Cir. 1997) (holding that meeting

24 with an EEO counselor is a protected activity); see also

25 McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124 n.19

26 (9th Cir. 2004) (citing Hashimoto with approval); (see,

27 e.g., PSUF ¶ 20, 23, 32-34, 44-46, 63, 108.)  Plaintiff

28

meets her burden to establish this element of her prima
facie retaliation claim.

### 2.  Adverse Employment Action

Plaintiff presents admissible evidence that Defendant
subjected her to the following employment actions that
she claims are adverse:[8] (1) she was designated AWOL in
May 2009 (PSUF ¶¶ 28-35, 44); (2) she was denied LWOP
status to perform clinical rotations at LLVAMC in June
2009 (PSUF ¶¶ 45-47); (3) in February 2010, she was
threatened with a privacy violation reproval if she did
not return her EEO file (DSUF ¶ 30; PSUF ¶¶ 60-67, 69);
(4) she was reassigned in February 2010 to a department
from which Plaintiff had been transferred previously
because of negative issues with other employees who
worked in that unit and her then-supervisor (PSUF ¶¶ 72-
74, 77-78); and (5) she was denied advanced sick leave
and was subsequently assigned AWOL status (PSUF ¶ 84-85,
97-99).  (See Opp'n at 12-13.)

An adverse employment action is "any adverse
treatment that is based on a retaliatory motive and is

---

[8]    As stated supra, Absent Without Leave ("AWOL")
status is an unapproved unpaid absence and is not a
disciplinary action, but can be used to support a
disciplinary action.  (DSUF ¶¶ 15-16.)  Leave Without Pay
("LWOP") is an unpaid, approved absence that may be used
instead of paid leave, but requires supervisory approval
in advance.  (DSUF ¶ 9.)  Approval of LWOP is a matter of
administrative discretion.  (DSUF ¶ 10.)

1   reasonably likely to deter the charging party or others

2   from engaging in protected activity."  Ray v. Henderson,

3   217 F.3d 1234, 1242-43 (9th Cir. 2000).  The Ninth

4   Circuit has provided the following guidance with respect

5   to whether an action taken by an employer against an

6   employee constitutes an "adverse employment action" for

7   purposes of a Title VII retaliation claim:

8         We have found that a wide array of disadvantageous
          changes in the workplace constitute adverse
9         employment actions.  While "mere ostracism" by
          co-workers does not constitute an adverse employment
10        action, see Strother v. Southern California
          Permanente Medical Group, 79 F.3d 859, 869 (9th Cir.
11        1996), a lateral transfer does. In Yartzoff v.
          Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), we held
12        that "[t]ransfers of job duties and undeserved
          performance ratings, if proven, would constitute
13        'adverse employment decisions.'"  The Yartzoff
          decision was in line with our earlier decision in St.
14        John v. Employment Development Dept., 642 F.2d 273,
          274 (9th Cir. 1981), where we held that a transfer to
15        another job of the same pay and status may constitute
          an adverse employment action.  Similarly, in
16        Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir.
          1997), we found that the dissemination of an
17        unfavorable job reference was an adverse employment
          action "because it was a 'personnel action' motivated
18        by retaliatory animus."  We so found even though the
          defendant proved that the poor job reference did not
19        affect the prospective employer's decision not to
          hire the plaintiff: "That this unlawful personnel
20        action turned out to be inconsequential goes to the
          issue of damages, not liability."  Id.  [¶]   In
21        Strother, we examined the case of an employee who,
          after complaining of discrimination, was excluded
22        from meetings, seminars and positions that would have
          made her eligible for salary increases, was denied
23        secretarial support, and was given a more burdensome
          work schedule.  79 F.3d at 869.  We determined that
24        she had suffered from adverse employment actions.  Id.

25  Id. at 1241-43 (finding lateral transfers, unfavorable

26  job references, and changes in work schedules to be

27  "reasonably likely to deter employees from engaging in

28

1  protected activity" and constituted adverse employment
2  actions under Title VII).

3
4        **a)   AWOL status in May 2009**
5        Plaintiff argues certain conduct, even if later
6  reversed, may still constitute an adverse action
7  prohibited by Title VII, that the jury could find the
8  AWOL designation could dissuade a reasonable employee
9  from engaging in protected activity, and the designation
10  damaged Plaintiff by causing her emotional distress and
11  fear that she could lose her job.  (See Opp'n at 13
12  (citing Thompson v. Donahoe, __ F. Supp. 2d__, 2013 WL
13  3286196 at *8 (N.D. Cal. Jun. 27, 2013), Burlington
14  Northern & Santa Fe Railway Co. v. White, 548 U.S. 53
15  (2006), and Rivers v. Potter, 2007 WL 4440880 (D. N.J.
16  Dec. 18, 2007).)  In response, Defendant argues the AWOL
17  designation in May 2009 did not constitute an "adverse
18  employment action" because it was temporary and corrected
19  shortly after Plaintiff complained.  (See Mot. at 7
20  (citing Brooks v. City of San Mateo, 229 F.3d 917, 930
21  (9th Cir. 2000) and Mendoza v. Sysco Food Serv. of
22  Arizona, Inc., 337 F. Supp. 2d 1172, 1184 (D. Ariz.
23  2004)).)

24
25        This case more closely resembles the cases relied
26  upon by Defendant, where no adverse employment action was
27  found.

28

1    For example, Defendant relies on <u>Brooks v. City of</u>
2 <u>San Mateo</u>, where the city employer scheduled the
3 plaintiff to work an undesirable shift and denied her
4 vacation preference.  The Ninth Circuit held this conduct
5 did not amount to an adverse employment action, noting
6 that after the plaintiff complained about the shift
7 change, the city "accommodated her preferences by
8 allowing her to switch shifts and vacation dates with
9 other employees."  229 F.3d at 930.  Hence, given that
10 the shift change was not final and the city had
11 accommodated plaintiff's request for shift and vacation
12 date changes, there was no adverse employment action.
13 <u>Id.</u>  <u>Brooks</u> is factually similar to this case.

14

15    Here, based on the undisputed evidence, Plaintiff
16 obtained approval to complete a clinical rotation at
17 LLVAMC starting in February 2009.  (DSUF ¶¶ 5, 6; PSUF ¶¶
18 6, 8, 12, 16, 18-20, 23, 24; Curd Decl., Ex. V-15 to V-
19 19, V-27, X-12.)  Plaintiff abided by the approved
20 schedule that accommodated her clinical rotation and only
21 took leave that had been approved in advance.  (PSUF ¶
22 31.)  Kawahara, however, designated Plaintiff as AWOL
23 over a period of approximately one month without
24 notifying Plaintiff.  (DSUF ¶ 8; PSUF ¶¶ 27-29, 34.)
25 Although AWOL (unpaid, unapproved leave) status, in and
26 of itself, was not considered by LLVAMC to be a form of
27 discipline, an AWOL designation could support discipline
28

of the employee.  (DSUF ¶¶ 15-16.)  Plaintiff understood
she could have been disciplined for being in AWOL status.
(PSUF ¶ 30.)  Plaintiff complained about her AWOL status
when her clinical rotations had been approved for LWOP.
(DSUF ¶ 13; PSUF ¶¶ 32-34.)  Human Resources mediated the
dispute and Kawahara corrected Plaintiff's records to
reflect LWOP instead of AWOL status.  (DSUF ¶ 13; PSUF ¶
44.)  As in <u>Brooks</u>, Kawahara's designation of Plaintiff
as AWOL was not "final" and Kawahara eventually changed
Plaintiff's status to LWOP after she complained.  <u>Brooks</u>,
229 F.3d at 930.

Likewise, Defendant cites <u>Mendoza v. Sysco Foods
Serv. of Arizona, Inc.</u>, in which the District Court found
an employer's change to the plaintiff's delivery route
and subsequent criticism of the plaintiff for the length
of time he spent to complete his deliveries, did not
constitute an adverse employment action.  <u>Mendoza</u>, 337 F.
Supp. 2d at 1184.  In that case, Mendoza sought relief
informally by meeting with Human Resources staff along
with his union steward to lodge a complaint about his new
delivery route.  <u>Id.</u>  The plaintiff apparently obtained
relief through the employer's grievance procedure.  <u>Id.</u>
at 1177 ("He declares that he obtained relief only after
he went to Sysco's Human Resources Center with his union
steward and complained.  Plaintiff does not explain
exactly what relief he obtained.")  There, relying on

Brooks, the Court reasoned that because the plaintiff had
received relief through the employer's grievance
procedure, the original change to the plaintiff's
delivery route did not constitute an adverse employment
action.  Id. at 1184.  Mendoza is not binding on this
Court, but it is persuasive given the factual
similarities to the present action, i.e., as in Mendoza,
Plaintiff employed informal internal grievances
procedures to remedy the AWOL designation.

    Plaintiff's cited authorities are distinguishable
factually, as discussed below.

    Plaintiff first relies on Burlington Northern & Sante
Fe Ry. Co. v. White, where the Supreme Court found a
plaintiff's 37-day suspension without pay constituted an
adverse employment action, even though it was later
rescinded and the plaintiff was provided back-pay.
Burlington, 548 U.S. at 72-73.  The Supreme Court pointed
out the severe burden imposed on the plaintiff and her
family if forced to forego a paycheck for over one month,
noting that "[a] reasonable employee facing the choice
between retaining her job (and paycheck) and filing a
discrimination complaint might well choose the former."
Id. at 73.  In light of the severity of such a sanction,
even if temporary, the Supreme Court found it qualified
as an adverse employment action.  Id.

1     Here, Plaintiff was not forced to forego a paycheck
2  she otherwise would have been entitled to when she was in
3  AWOL status; both AWOL and LWOP statuses are unpaid.  In
4  addition, although Plaintiff claims she suffered anxiety
5  and emotional distress at the prospect of discipline for
6  AWOL status, any emotional suffering was short-lived as
7  Kawahara changed her status to LWOP shortly after she
8  complained.  Plaintiff's short span of emotional distress
9  contrasts sharply with the Burlington plaintiff's loss of
10 income for more than one month.

11

12     Plaintiff next relies on Thompson v. Donahoe, in
13 which the District Court found as follows:

> The Ninth Circuit has not addressed the issue, and
> therefore this Court assumes without deciding that
> issuing Plaintiff a letter of warning was an adverse
> employment action.  Defendant likewise cites no case
> law for the proposition that sending an employee a
> notice of suspension is not an adverse employment
> action where the suspension was later rescinded.  The
> Court assumes that this also constitutes an adverse
> employment action.

19 2013 WL 3286196, at *8.  Aside from the fact that Donahoe
20 is not binding precedent, the Court finds this case of
21 little authority on the point relied upon by Plaintiff
22 for two reasons.  First, the Donahoe court assumed
23 without actually deciding the issue of whether a
24 suspension notice that was later withdrawn constituted an
25 adverse employment action.  Second, Donahoe is further
26 distinguishable from the present action, as Plaintiff was
27 never issued a suspension notice, which is a form of
28

discipline.  Rather, Plaintiff's AWOL designation was
not, in and of itself, a form of discipline, although it
could be used to support discipline in the future.  (DSUF
¶¶ 15-16.)  Finally, the Court is not persuaded to adopt
Donahoe's reasoning, as Defendant has cited a binding
Ninth Circuit case that is analogous factually, i.e.,
Brooks.

Plaintiff also cites the non-binding authority of
Rivers v. Potter, a case decided by the New Jersey
District Court.  In Rivers, the plaintiff had been issued
a warning letter that was later reduced to an official
discussion after the plaintiff complained.  Rivers, 2007
WL 4440880, at *1, 9.  Citing Burlington, the District
Court found "[t]he letter of warning ... constitutes the
kind of materially adverse employment action that could
support a retaliation claim under Title VII" because it
could "cause an employee to reconsider bringing an EEO
charge."  Id. at *9.  This case is of little, if any,
persuasive value here.

As Plaintiff has not presented the Court with any
authority dictating a finding that her AWOL designation
should be considered an adverse employment action, the
Court is compelled to follow the Ninth Circuit's decision
in Brooks.  Accordingly, Plaintiff has not met her burden
as to this element of her prima facie retaliation claim.

See <u>Brooks</u>, 229 F.3d at 930; <u>see also</u> <u>Mendoza</u>, 337 F. Supp. 2d at 1184.

### b)   Denial of LWOP for clinical rotations after June 2009

Plaintiff argues Defendant unreasonably denied her request for LWOP status to complete her clinical rotations at LLVAMC after June 2009: she contends a jury could reasonably find such an action would dissuade a reasonable employee from engaging in protected activity. (<u>See</u> Opp'n at 13 (citing <u>Burlington</u>, 548 U.S. at 69).) Defendant argues "[d]enial of Plaintiff's preferred abbreviated work schedule to perform her personal educational pursuits at Loma Linda VAMC during her preferred time does not constitute a[n] [] [adverse] employment [] action."  (Mot. at 7.)

As an initial matter, <u>Burlington</u> does not support Plaintiff's argument.  Plaintiff relies on the following statement in the <u>Burlington</u> decision: "Excluding an employee from a weekly training lunch that contributes significantly to the employee's professional development, might well deter a reasonable employee from complaining about discrimination."  (Opp'n at 13-14.)  First, this language is <u>dicta</u> and is not binding precedent.  Second, the scenario contemplated by the Supreme Court's hypothetical is entirely distinguishable from the facts

1  presented here.  Plaintiff was not excluded from
2  professional development opportunities available to other
3  employees.  In fact, the undisputed evidence shows that
4  Plaintiff was one of two employees at LLVAMC who were
5  allowed to complete professional training at LLVAMC.
6  Accordingly, Burlington does not support Plaintiff's
7  argument.

8

9      In fact, applying Burlington's reasonable employee
10  standard, a reasonable employee would not expect her
11  employer to allow her to work part-time for approximately
12  one year - the length of time it took Plaintiff to
13  complete her Pharm D. clinical rotations - so that she
14  could complete an advanced degree and conduct clinical
15  rotations on site where she worked for pay.  Burlington,
16  548 U.S. at 69.  Although Plaintiff is correct that
17  LLVAMC employees were permitted to seek LWOP for
18  educational attainments (DSUF ¶ 11), those requests were
19  not granted automatically and were subject to the
20  discretion of management (DSUF ¶ 9, 10).  Moreover,
21  Werdebaugh testified at her deposition that she
22  intervened to assist Plaintiff with her request to do one
23  clinical rotation at LLVAMC and never indicated to
24  Plaintiff that she would be able to make arrangement for
25  any additional rotations.  (See Supp. Cameron-Banks
26  Decl., Ex. 14 at 116:7-22.)

27

28

1    Furthermore, Plaintiff was the only LLVAMC employee
2  who had been allowed to complete a clinical rotation on a
3  part-time basis at LLVAMC while having her paid work
4  shift reduced to part-time, when her position did not
5  require an advanced (Pharm D.) degree.  (DSUF ¶¶ 3, 17,
6  21.)  Derek Abrams, a clerk in the inpatient pharmacy,
7  was permitted to complete an externship at LLVAMC but he
8  completed his externship on his own time, outside of his
9  normal work hours, on nights and weekends.  (See Supp.
10  Cameron-Banks Decl., Ex. 14 at 182:2-22.)  Based on
11  LLVAMC's policies and the express statements made by
12  Human Resources personnel to Plaintiff, no reasonable
13  employee would have believed they were entitled to pursue
14  their educational development further, beyond the one
15  clinical rotation agreed to by Kawahara and other
16  management at LLVAMC.

17

18    The undisputed evidence also shows that, despite her
19  inability to perform future clinical rotations at LLVAMC,
20  Plaintiff's educational pursuits were accommodated as
21  follows: (1) Plaintiff was offered the opportunity to
22  switch her shift to work on evenings and weekends, so
23  that she could complete her clinical rotations during the
24  day at another facility; and (2) Plaintiff had the
25  opportunity to complete her clinical rotations on
26  evenings and weekends at another Facility in the event
27  she elected not to change her shift.  (PSUF ¶¶ 45-46;

28

DSUF ¶ 21.)  Plaintiff declined the opportunity to change her shift, as she understood the shift change would have been permanent, and completed her clinical rotations off-site in December 2009.  (PSUF ¶¶ 47, 53.)

Plaintiff has not met her burden to show she suffered an adverse employment action based on the denial of LWOP to complete future clinical rotations.  Furthermore, Plaintiff has offered no evidence or legal authority to show how denial of this leave request was "reasonably likely to deter [a reasonable employee] from engaging in protected activity."  Ray v. Henderson, 217 F.3d at 1241-43.

Accordingly, based on the undisputed evidence, the Court finds the decision declining Plaintiff's request to complete her future clinical rotations at LLVAMC on a part-time basis was not an adverse employment action and Defendant reasonably accommodated Plaintiff's educational pursuits.

### c)  Privacy violation

According to Plaintiff, the February 12, 2010 meeting she had with LLVAMC staff regarding the mishandling of her EEO file constituted an adverse employment action. (See Opp'n at 14 ("As to the threat of criminal prosecution over the missing EEO file, being threatened

1    with criminal prosecution after complaining to the EEO

2    manager that her private EEO file had been left in a

3    public place, and turning the matter over to her attorney

4    for handling, would almost certainly dissuade a

5    reasonable employee from making such complaints, and

6    seeking legal assistance in the future.").)  Plaintiff

7    cites no legal authority to support her position and the

8    Court has found inadmissible most of the evidence she

9    relies upon regarding what occurred during the meeting

10   about the EEO file, as discussed <u>supra</u>.[9]  In particular,

11   the Court has found Curtis's statements made to Plaintiff

12   during the February 12, 2010 meeting inadmissible because

13   the evidence lacks foundation as to whether or not Curtis

14   was employed by LLVAMC when he made the statements.

15   Plaintiff's recitation of Curtis's statements during the

16   meeting in her Declaration are inadmissible hearsay and,

17   in any event, irrelevant as Plaintiff has not established

18   Curtis's employment relationship with LLVAMC.

19

20

21   ───────────────

22        [9]    As stated in the Court's evidentiary rulings,
     although the record before the Court contains testimony
     from Kawahara, Dahlan, and Plaintiff about Curtis's
23   statements made during the February 12, 2010 meeting,
     those statements are inadmissible hearsay, as the Court
24   has been provided with no evidence about Curtis's job
     responsibilities or that he was an employee of LLVAMC to
25   demonstrate whether or not he made those statements
     within the scope of his employment.  The Court found
26   Curtis's statements irrelevant because Plaintiff did not
     meet her burden to establish that statements made by
27   Curtis, as reported by herself, Kawahara, or Dahlan, are
     admissible and not hearsay.  <u>See</u> <u>Chang</u>, 207 F.3d at 1176.

28

1    Even assuming, arguendo, Plaintiff had established
2 Curtis's employment by LLVAMC, Plaintiff's reliance on
3 the temporal proximity between her complaint to her EEO
4 manager and being subject to a meeting regarding the
5 location of her EEO file is misplaced here.  (See Opp'n
6 at 14.)  First, Plaintiff does not provide the Court with
7 any evidence that Curtis knew Plaintiff had complained to
8 her EEO manager about the file before the February 12,
9 2010 meeting.  In addition, the Court finds conclusory
10 and unsupported by legal authority or evidence
11 Plaintiff's argument that a reasonable employee would be
12 dissuaded from engaging in protected activity given the
13 circumstances faced by Plaintiff during the February 12,
14 2010 meeting.[10]  Plaintiff's argument is further undercut
15 because she was not dissuaded from engaging in protected
16 activity after the meeting, as she filed on March 22,
17 2010 an EEO complaint, in part, about her treatment
18 during the February 12, 2010 meeting.  (See PSUF ¶ 80.)
19
20    Accordingly, the Court finds Plaintiff has not met
21 her burden to show that the February 12, 2010 meeting
22 constituted an adverse employment action.
23
24
25 _____
26    [10]   A conclusory allegation is insufficient to
create a genuine issue of material fact.  United States
27 ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d
1047, 1061 (9th Cir. 2011); United States v. Shumway, 199
28 F.3d 1093, 1104 (9th Cir. 1999).

1           **d)   Transfer to outpatient pharmacy**

2           Plaintiff argues next that her transfer to the

3    outpatient pharmacy constituted an adverse employment

4    action because: (1) she previously had been subjected to

5    discrimination in that department and the Administrative

6    Board of Investigations had recommended in 2003 that

7    Plaintiff not be stationed in the outpatient department;

8    (2) her job duties were changed when she was reassigned;

9    (3) Defendant failed to show the persons Plaintiff had

10   previously accused of unlawful harassment and

11   discrimination no longer worked in the outpatient

12   department; and (4) that any reasonable employee would be

13   dissuaded from engaging in protected activity if they

14   were faced with Plaintiff's reassignment.  (See Opp'n at

15   14 (citing Yartzoff, 809 F.2d at 1376 and Burlington, 548

16   U.S. 53.)  Without citing any authority, Defendant

17   argues Plaintiff's reassignment was not an adverse

18   employment action and that "Plaintiff failed to submit

19   any admissible evidence to establish that the re-

20   assignment affected her workload, work schedule, or

21   compensation, or that the re-assignment would place her

22   under the supervision of her previously complained about

23   first-line supervisor."  (Reply at 9; see also Mot. at

24   8.)

25

26          Depending on the circumstances, a job transfer can

27   amount to an adverse employment action for purposes of

28

Title VII.  See Poland, 494 F.3d at 1180; Yartzoff, 809
F.2d at 1376.  In Poland[11], the Ninth Circuit found the
plaintiff had suffered two adverse employment actions:
(1) an investigation was initiated against him after he
filed an EEO complaint; and (2) he was transferred to
Virginia from Portland, Oregon.  The district court had
found the transfer to Virginia constituted a constructive
discharge "'because the reassignment to Virginia resulted
in separation from his family and demotion to a
nonsupervisory position.'"  494 F.3d at 1179.  The Ninth
Circuit affirmed the district court's finding.  Id. at
1180.

Likewise, in Yartzoff, the Ninth Circuit found the
plaintiff was subjected to two adverse employment
actions, including the transfer of the plaintiff's
duties.  809 F.2d at 1375-76.  Over the period of six
months, the plaintiff's supervisors "transferred several
job duties away from him" and then approximately one year
later "transferred additional responsibilities away from
him."  Id. at 1373.  The Ninth Circuit found the
plaintiff "clearly met" the second element of his prima
facie retaliation claim on this factual basis.  Id. at
1375-76.

---

[11]  Although Poland is a case with claims brought
under the Age Discrimination and Employment Act ("ADEA"),
the Ninth Circuit's discussion of the plaintiff's case
adopts the Title VII retaliation framework.  The Court
finds this analysis persuasive here.

1        Here, the Court must evaluate each factual basis for

2   Plaintiff's argument to determine whether or not she

3   meets her burden as to this element of her prima facie

4   retaliation claim.

5

6        As to Plaintiff's first basis for claiming the

7   transfer was an adverse action, the Court has ruled,

8   supra, that the findings and recommendations of the

9   Administrative Board of Investigations are inadmissible

10  hearsay and the Court will not consider them.  Plaintiff

11  does, however, present admissible evidence through her

12  Declaration that in 2003 she had been transferred from

13  the outpatient pharmacy because she felt harassed by her

14  supervisor, Ron Chan, and six co-workers.  (See Uche-

15  Uwakwe Decl. ¶ 42 (limited per the Court's ruling,

16  supra).)  Plaintiff also presents undisputed evidence

17  that several of those persons who Plaintiff felt had

18  harassed her previously were working in the outpatient

19  department at the time of her reassignment in February

20  2010.  (Id. at ¶ 43 (limited per the Court's ruling,

21  supra).)  Moreover, Sam, the outpatient supervisor, told

22  Plaintiff that the outpatient pharmacy was not

23  understaffed at the time of Plaintiff's transfer.  (Id.

24  at ¶ 41.)  The Court finds this basis supported by

25  admissible, undisputed evidence.

26

27

28

1    As to Plaintiff's second basis, she does not present
2  admissible evidence to show her job duties changed when
3  she was transferred to the outpatient pharmacy.   The
4  parties present undisputed, admissible evidence regarding
5  the job duties of inpatient pharmacists at LLVAMC and
6  Plaintiff's job duties as an outpatient pharmacist
7  stationed in the inpatient pharmacy department.   (DSUF ¶
8  35 (limited to the Court's ruling, <u>supra</u>); Supp. Cameron-
9  Banks Decl., Ex. 15 at 15:6-16:10; Supp. Werdebaugh
10  Decl., Ex. 13.)   Neither party, however, presents
11  admissible evidence that Plaintiff's job duties changed
12  in any way when she was transferred to the outpatient
13  pharmacy in February 2010.   Accordingly, the Court does
14  not find this basis supported by admissible evidence.
15
16    Plaintiff's third basis is duplicative of the first
17  and does not independently support Plaintiff's argument.
18  Moreover, it is not Defendant's burden to prove
19  Plaintiff's <u>prima facie</u> case.
20
21    As to Plaintiff's fourth basis, the Court finds
22  reassigning an employee to a unit from which she had been
23  transferred previously because of harassment by co-
24  workers who remain in that department would dissuade a
25  reasonable employee from engaging in protected activity.
26  <u>See</u> <u>Brosseau v. Huagen</u>, 543 U.S. 194, 195 n.2 (2004)
27  ("Because this case arises in the posture of a motion for
28

1  summary judgment, we are required to view all facts and

2  draw all reasonable inferences in favor of the nonmoving

3  party ...."); Ray v. Henderson, 217 F.3d at 1241-43.

4  Contrary to Defendant's argument, Plaintiff need not show

5  that her job duties, compensation, and schedule changed

6  in order to show the transfer was an adverse employment

7  action.  See Ray v. Henderson, 217 F.3d at 1241-43.

8

9      Based on the admissible evidence, Plaintiff meets her

10  burden as to this element of her prima facie retaliation

11  claim.  The transfer of Plaintiff to the outpatient

12  pharmacy, in light of the history of harassment by

13  employees who remained working in that unit at the time

14  of the transfer, constituted an adverse employment

15  action.  See Poland, 494 F.3d at 1180; Yartzoff, 809 F.2d

16  at 1376.

17

18          **e)  Denial of advanced leave**

19      Finally, Plaintiff argues she suffered an adverse

20  employment action when Defendant denied her request for

21  advanced sick leave.[12]  (See Opp'n at 14-15.)  Plaintiff

22  ────────────────

23      [12]   In her Opposition papers, Plaintiff also cites
   being designated AWOL after being denied advanced sick
24  leave as support for her argument that she suffered an
   adverse employment action.  (See Opp'n at 13 ("(5) Denial
25  of advanced sick leave request prompted by job related
   stress in April 2010, and subsequent assignment of AWOL
26  status.").)  Aside from this reference, however,
   Plaintiff does not develop her argument about being
27  designated AWOL or even mention it again.  The Court
   cannot intuit Plaintiff's intended argument on this basis
28                                              (continued...)

1   contends she was subjected to significant job-related

2   stress that forced her to take extended leave and

3   necessitated additional sick leave, for which she argues

4   she qualified under the LLVAMC policy.  (Id.)  She

5   argues, in conclusory fashion and without citing any

6   supporting authority, that "[a]ny reasonable employee in

7   such circumstances would be dissuaded from engaging in

8   protected activity if they thought that doing so would

9   cause them to be denied needed leave."  (Id.)  Defendant

10  argues, in similarly bald fashion, that no reasonable

11  employee would expect to be "given such a large amount of

12  leave" and that "the denial had no discernible effect on

13  Plaintiff's ability to [] remain away from work for over

14  one and one-half years."  (Mot. at 8.)

15

16      The Court first considers whether or not Plaintiff

17  has presented admissible evidence demonstrating her

18  entitlement to advanced sick leave under LLVAMC's policy.

19

20      The LLVAMC advanced sick leave policy states the

21  following:

22      Advanced sick leave may be requested in cases of
        serious disability or ailments if the employee has no
23      time limit on his/her appointment.  Most employees
        may be advanced up to 240 hours (not in excess of 30
24      days) of sick leave; employees serving under a time
        limited or term appointment may be granted advanced
25      sick leave up to the total which would otherwise be
        earned during the term of appointment.  **Employees do**
26

27          [12](...continued)
28  and will not address it.

69

1   **not have a vested right to advanced leave, regardless
2   of the circumstances.** Employees will originate any
    requests for advanced leave in writing, along with
3   any supporting evidence or medical documentation, and
    will be expected to enter his/her leave request in
4   the ETA or completed SF-17 and attach it to the
    written request.  The request package will be
5   submitted to the immediate supervisor.  The
    supervisor will forward the package, with a
6   recommendation for approval/disapproval, to the
    service chief.  The service chief will then address
7   the advanced leave criteria (Attachment C), make a
    recommendation for approval/disapproval, and forward
8   the package through HRM to the appropriate Vice
    President for approval/disapproval.

9   (See Werdebaugh Decl, Ex. 5 at p. 7 (emphasis in

10  original).)

11

12      "Attachment C" to LLVAMC's advanced sick leave policy

13  sets out eight criteria for consideration by the service

14  chief, as follows: (1) "The employee must have a serious

15  need for advanced leave;" (2) "The reasonable expectation

16  that the employee will return to duty;" (3) "The need for

17  the employee's services upon return from approved

18  absence;" (4) "Such leave must also meet the needs of the

19  Medical Center and the service involved;" (5) "The

20  employee must have been at the Medical Center for one

21  year;" (6) "The employee must not have a record of leave

22  abuse;" (7) "The employee must have demonstrated

23  performance worthy of the privilege;" and (8) "As of the

24  date of the request, the employee's available balances of

25  annual and sick leave, plus the employee's cumulative

26  usage of leave over the previous two years." (Id. at p.

27  12.)

28

1    Plaintiff presents admissible evidence that she
2  submitted her request for advanced sick leave in writing
3  with supporting medical documentation.  (PSUF ¶ 81.)
4  Although Plaintiff presents admissible evidence with
5  respect to Categories 2, 3, and 5 through 7 (see PSUF ¶¶
6  88, 89, 91-93), Plaintiff fails to present admissible
7  evidence as to Categories 1, 4, and 8, as discussed supra
8  in the Court's evidentiary rulings with respect to PSUF
9  ¶¶ 87, 90, and 94.  Plaintiff, thus, did not make a
10 necessary showing as to each category the Vice President
11 was required to consider when evaluating her request for
12 advanced sick leave per LLVAMC's advanced leave policy.
13 Moreover, the policy clearly states (1) employees do not
14 have a vested right to advanced sick leave and (2) that
15 advanced leave will be granted at the discretion of the
16 appropriate Vice President after considering the eight
17 factors identified in "Attachment C" and the
18 recommendations of the employee's immediate supervisor
19 and service chief.  (Werdebaugh Decl, Ex. 5 at p. 7, 12.)
20 Based on the terms of the advanced leave policy, no
21 reasonable employee in Plaintiff's circumstances would
22 believe she would obtain advanced leave, in particular
23 296 hours of non-FMLA LWOP, under the established
24 criteria.  Furthermore, a reasonable employee would not
25 be dissuaded from engaging in protected activity after
26 their request for advanced leave was denied.  See Ray v.
27 Henderson, 217 F.3d at 1241-43.
28

1   Accordingly, the Court finds the denial of
2   Plaintiff's request for advanced leave was not an adverse
3   employment action; Plaintiff has not met her burden as to
4   this element of her prima facie retaliation claim.

5

6   **3.   Causation**
7   Plaintiff has met her burden as to the first two
8   elements of her prima facie retaliation claim based on
9   her transfer to the outpatient pharmacy.  The Court now
10  evaluates whether or not Plaintiff meets her burden with
11  respect to the causation element.

12

13  As stated above, Plaintiff must show that her
14  engagement in protected activity was the but-for cause
15  for her reassignment to the outpatient pharmacy.  See
16  Nassar, 133 S. Ct. at 2533-34; Westendorf, 712 F.3d at
17  422-23 (applying but-for causation standard to Title VII
18  retaliation claim); Villiarimo, 281 F.3d at 1064-65
19  (same).[13]  In Villiarimo, the Ninth Circuit stated the
20  following about proving but-for causation in Title VII
21  retaliation cases:

22       We have recognized previously that, in some cases,
         causation can be inferred from timing alone where an
23       adverse employment action follows on the heels of

24  _____

25       [13]   The Court notes that the Supreme Court in Nassar
    announced the but-for causation standard for retaliation
26  claims brought under Title VII on June 24, 2013.  The
    Court relies on Nassar in its analysis, as well as Ninth
27  Circuit precedent that have applied the but-for causation
    standard to Title VII retaliation cases, but predate the
28  Nassar decision.

protected activity.  *See* <u>Passantino v. Johnson & Johnson Consumer Prods., Inc.</u>, 212 F.3d 493, 507 (9th Cir. 2000) (noting that causation can be inferred from timing alone); <u>see also</u> <u>Miller v. Fairchild Indus.</u>, 885 F.2d 498, 505 (9th Cir. 1989) (<u>prima facie</u> case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings); <u>Yartzoff</u>, 809 F.2d at 1376 (sufficient evidence existed where adverse actions occurred less than three months after complaint filed, two weeks after charge first investigated, and less than two months after investigation ended).  But timing alone will not show causation in all cases; rather, "in order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'" <u>Paluck v. Gooding Rubber Co.</u>, 221 F.3d 1003, 1009-10 (7th Cir. 2000).  A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation.  <u>See id.</u> (finding that a one-year interval between the protected expression and the employee's termination, standing alone, is too long to raise an inference of discrimination); <u>see also</u> <u>Filipovic v. K & R Express Sys., Inc.</u>, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months too long); <u>Adusumilli v. City of Chicago</u>, 164 F.3d 353, 363 (7th Cir. 1998) (eight months too long), cert. denied, 528 U.S. 988, 120 S. Ct. 450, 145 L. Ed. 2d 367 (1999); <u>Davidson v. Midelfort Clinic, Ltd.</u>, 133 F.3d 499, 511 (7th Cir. 1998) (five months too long); <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997) (four months).

281 F.3d at 1064-65.

Here, Plaintiff's protected activities include filing EEO complaints against Kawahara on September 30, 2008 for employment discrimination (PSUF ¶ 37) and on August 24, 2009 for designating her AWOL (PSUF ¶ 48), and complaining to her EEO representative about the mishandling of her EEO file on February 10, 2010 (PSUF ¶ 61).  Plaintiff's August 24, 2009 EEO complaint was

1  awaiting a hearing as of February 12, 2010.  (PSUF ¶ 60.)

2

3      In this analysis, the Court cannot consider evidence

4  of protected activities in which Plaintiff engaged after

5  the adverse employment action; accordingly, any of

6  Plaintiff's protected activities after February 12, 2010

7  are irrelevant, as Plaintiff has established only that

8  her reassignment to the outpatient pharmacy constituted

9  an adverse employment action.  See, e.g., see also

10 Richards v. City of Seattle, No. 08-35621, 2009 WL

11 2196895 (9th Cir. July 24, 2009) (affirming district

12 court's grant of summary judgment and noting the

13 plaintiff could not demonstrate a causal nexus where the

14 adverse employment action took place before the protected

15 activity); Diaz v. Connolly, No. 08-16170, 2009 WL

16 1515637 (9th Cir. June 1, 2009) (same).[14]

17

18     Plaintiff's three relevant protected activities

19 occurred one and a half years, six months, and one day,

20 respectively, before the adverse employment action, i.e.,

21 her transfer to the outpatient pharmacy.  Plaintiff's

22 first protected activity, the discrimination charge

23 against Kawahara filed in 2008, occurred too long before

24 the adverse employment action to warrant a causation

25 inference.  See Miller, 885 F.2d at 505; Yartzoff, 809

26 _____

27     [14]   The Court cites both unpublished Ninth Circuit
   cases as persuasive authority pursuant to Ninth Circuit
28 Rule 36-3(b).

1  F.2d at 1376; <u>Paluck</u>, 221 F.3d at 1009-10.  The remaining
2  two activities, however, are sufficiently close in time
3  to support an inference of causation here.  <u>Id.</u>  In
4  particular, the August 24, 2009 EEO complaint against
5  Kawahara was pending hearing at the time of the February
6  12, 2010 meeting.  The February 12, 2010 meeting
7  concerned the location of Plaintiff's EEO file that
8  contained her August 24, 2009 EEO complaint.  Kawahara
9  was a party to the February 12, 2010 meeting about
10  Plaintiff's EEO file.  Directly after the February 12,
11  2010 meeting about the EEO file and while Kawahara,
12  Plaintiff, and Dahlan were still in the meeting room,
13  Kawahara issued Plaintiff the notice that she was
14  transferred to the outpatient pharmacy.  Given this
15  sequence of events, Plaintiff meets her burden as to this
16  element of but-for causation for her <u>prima facia</u>
17  retaliation case, given the proximity in time between her
18  protected activities and the adverse employment action.[15]
19  <u>See</u>, <u>e.g.</u>, <u>Adusumilli</u>, 164 F.3d at 363 ("in some
20  circumstances, this sequence of events could raise the
21  inference of a causal connection"); <u>see also</u> <u>Miller</u>, 885
22
23
24  _____
25      [15]   In the alternative, Plaintiff argues she has
    presented direct evidence of retaliatory motive, <u>i.e.</u>,
    statements made by Kawahara as relayed by Plaintiff's
26  supervisors and an EEO manager.  (Opp'n at 16.)  The
    Court rejects Plaintiff's alternative argument as the
27  Court has found Plaintiff's evidence proffered in support
    of this argument to be inadmissible hearsay, irrelevant,
28  and unduly prejudicial, discussed <u>supra</u>.

1  F.2d at 505; <u>Yartzoff</u>, 809 F.2d at 1376; <u>Paluck</u>, 221 F.3d

2  at 1009-10.

3

4      Accordingly, the Court finds Plaintiff has met her

5  burden to prove each element of her <u>prima facie</u>

6  retaliation claim.

7

8      **4.   Defendant's Non-Retaliatory Reason for Adverse**

9          **Employment Action**

10     As Plaintiff has met her burden of showing a <u>prima</u>

11  <u>facie</u> retaliation claim, the burden now shifts to

12  Defendant to articulate a legitimate, non-retaliatory

13  reason for his action.  <u>Stegall</u>, 350 F.3d at 1065.

14

15     According to Defendant, Plaintiff was transferred to

16  the outpatient pharmacy "to allow the understaffed

17  outpatient pharmacy section to have full use of the full-

18  time outpatient pharmacists, and to allow the Loma Linda

19  VAMC Pharmacy management the ability to properly

20  supervise and evaluate Plaintiff's performance."  (Mot.

21  at 10; <u>see also</u> Reply at 10 (same).)  In his moving

22  papers, Defendant relies on DSUF ¶¶ 33 through 35 to

23  support his argument.  (<u>See</u> Mot. at 10).  As discussed

24  <u>supra</u>, the Court has found DSUF ¶¶ 33 and 34 unsupported

25  by admissible evidence in full and DSUF ¶ 35 only to be

26  supported by admissible evidence as to the following

27  statements: "At the time, Plaintiff, as an outpatient

28

pharmacist" and "could not be properly supervised or evaluated [by] the inpatient pharmacy supervisor." Also as to DSUF ¶ 35, the supporting deposition testimony from Dahlan reflects that she, as the inpatient pharmacy manager, had a difficult time evaluating Plaintiff but there is no testimony about why Plaintiff was transferred to the outpatient pharmacy. (See Cameron-Banks Decl., Ex. 9 at 18:10-20:5.) This evidence is insufficient for the Court to infer Defendant had a legitimate reason for transferring Plaintiff to the outpatient pharmacy.

In his Reply papers, Defendant also cites deposition testimony of Kawahara to support his argument about the purported non-retaliatory reason for Plaintiff's transfer. (See Reply at 10.) Specifically, Kawahara testified that Plaintiff was transferred to the outpatient pharmacy because "she was working under a functional statement as an outpatient pharmacist." (Werdebaugh Decl., Ex. 10 at 156:21-24.) The Court does not find this testimony, in and of itself, evidences the purported non-retaliatory reason proffered by Defendant for Plaintiff's transfer.

Although Defendant does not cite it in support of his argument that a legitimate, non-retaliatory reason existed for Plaintiff's transfer, Defendant attaches the memorandum Kawahara issued to Plaintiff that instituted

1  the transfer on February 12, 2010 within his Exhibit 2,

2  which Werdebaugh testified through declaration is "a true

3  and accurate copy of the EEO Complaint for EEO Case No.

4  200P-0605-201010353, along with true and accurate portio.

5  [sic]."  (See Werdebaugh Decl., Ex. 2 at 10.)   The Court

6  notes that Defendant does not authenticate this

7  memorandum with testimony from Kawahara, Plaintiff, or

8  Dahlan, the three persons in the meeting room when

9  Kawahara issued the memorandum to Plaintiff; Defendant

10  provides portions of testimony from each witness, but

11  none that authenticates this document specifically.  (See

12  Cameron-Banks Decl., Exs. 7, 9, 10.)   Plaintiff, however,

13  does not dispute the document's authenticity and, in

14  fact, relies upon this document for the truth of the

15  matter in opposing the Motion.  (See Uche-Uwakwe Decl. ¶

16  41 ("Dr. Kawahara gave me an envelope and harshly told me

17  that the envelope contained my reassignment back to the

18  outpatient pharmacy, effective March 15, 2010 (Movant's

19  Exh. 2-10).").)   The Court, thus, considers this

20  memorandum admissible evidence for purposes of this

21  Motion, as the memorandum coupled with Plaintiff's

22  declaration testimony "support a finding that the matter

23  in question is what the proponent claims."  Orr, 285 F.3d

24  at 773 (citation omitted).

25

26

27

28

The February 12, 2010 memorandum identified the following reason for Plaintiff's transfer to the outpatient pharmacy:

> "Recently, a review was conducted based on staffing/workload needs within Outpatient Pharmacy. This review found it necessary to make staff adjustments. As a result, this memorandum is to inform you that you will be reassigned to the Outpatient Pharmacy Section to provide support as a Staff Pharmacist effective Monday, March 15, 2010."

(See Werdebaugh Decl., Ex. 2 at 10.)

Defendant, with the February 12, 2010 memorandum and the cited Kawahara deposition testimony that Plaintiff was transferred because she was working under a functional statement as an outpatient pharmacist, meets his burden to show that the reason for Plaintiff's transfer was legitimate and not retaliatory.

### 5.  Pretext

As Defendant has met his burden to provide a legitimate, non-retaliatory reason for transferring Plaintiff to the outpatient pharmacy, the burden shifts to Plaintiff to show that the employer's reason is pretextual.  See Stegall, 350 F.3d at 1065.

Plaintiff can meet her resulting burden by presenting "specific and substantial" circumstantial evidence, including temporal proximity between Defendant's adverse actions and her protected activity that Defendants sought to repress.  Bergene v. Salt River Project Agric.

1  <u>Improvement & Power Dist.</u>, 272 F.3d 1136, 1142 (9th Cir.

2  2001).  Plaintiff's evidence "must either 'directly . . .

3  persuad[e]'" the Court that Defendant was "'more likely

4  motivated'" by an impermissible purpose, <u>i.e.</u>,

5  retaliation, than by his stated purpose, or "'indirectly

6  . . . show[] that [Defendant's] proffered explanation is

7  unworthy of credence.'"  <u>Block v. Solis</u>, 436 Fed. App'x

8  777, 779, 2011 WL 2193380 (9th Cir. June 7, 2011)[16]

9  (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450

10  U.S. 248, 256 (1981)) (brackets of the <u>Solis</u> Court).

11

12     While "[g]enerally, a plaintiff need only offer 'very

13  little' direct evidence of motivation to survive summary

14  judgment," <u>Ulrich v. City and Cnty. of S.F.</u>, 308 F.3d

15  968, 980 (9th Cir. 2002) (citation omitted), Defendant is

16  nevertheless entitled to summary judgment "if [Plaintiff]

17  created only a weak issue of fact as to whether

18  [Defendant's] reason was untrue and there was abundant

19  and uncontroverted evidence" that Defendant's conduct was

20  not retaliatory.  <u>Cf. Reeves v. Sanderson Plumbing</u>

21  <u>Prods., Inc.</u>, 530 U.S. 133, 148 (2000) (holding, in an

22  age discrimination case, that even if a plaintiff adduces

23  sufficient evidence for a court to reject a defendant's

24  nondiscriminatory explanation for its conduct, the

25  defendant may still prevail as a matter of law).

26

27     [16]  Cited as persuasive authority pursuant to Ninth

28  Circuit Rule 36-3.

Plaintiff may not avoid summary judgment by arguing, in the face of the evidence to the contrary, that the set of events she alleges "could conceivably have occurred," because the mere conceivability of a set of events "does not give rise to a reasonable inference it did in fact occur." <u>Cafasso</u>, 637 F.3d at 1061.  Moreover, "an employee's subjective personal judgments" do not raise a genuine issue of material fact.  <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 270 (9th Cir. 1996).

Here, Plaintiff argues that the temporal proximity between her protected activities and the adverse employment action provide sufficient evidence of pretext. (<u>See</u> Opp'n at 19-20.)  In addition, specifically as to her transfer to the outpatient pharmacy, Plaintiff argues the following:[17]

> While the VA contends that Plaintiff was transferred back to the outpatient department due to "staffing needs", Defendant has offered no evidence as to what those staffing needs were or what staffing review was conducted.  Plaintiff has offered evidence that neither the inpatient supervisor nor the outpatient supervisor were consulted on the need for the transfer before it was ordered.  Plaintiff has also offered the statement of Dr. Sam, the outpatient supervisor, to the effect that she was not understaffed at the time, did not request the transfer, and did not have an available shift for Plaintiff.  [¶]  Plaintiff has offered evidence that the transfer involved a change in her duties because she would no longer be performing inpatient functions, and would be performing different outpatient functions.  Plaintiff has also offered evidence that she was being sent back to work with

---

[17]   The Court quotes Plaintiff's argument in full, to avoid an inartful summary.

1   many of the same people that had created the hostile
    work environment in the first place, before she was
2   transferred out at the recommendation of the ABOI.
    Defendant has no admissible evidence that the
3   circumstances requiring Plaintiff's removal had
    changed.  Dr. Kawahara never talked to Plaintiff
4   before making his decision, does not recall what
    staffing review he conducted, and has offered no
5   evidence that he did anything to verify the
    circumstances in outpatient had changed.  [¶]
6   Finally, the transfer was not done in accordance with
    the policy as expressed by the Master Agreement,
7   Article 12, Details, Reassignments and Temporary
    Promotions, in that there was no positing of the job
8   notice for the outpatient department, no
    consideration of voluntary requests, or adequate
9   notification of reassignment.

10  (Reply at 22-23 (emphasis in original).)

11
12       Preliminarily, as stated herein, the Court has found

13  inadmissible Plaintiff's evidence that Plaintiff's

14  transfer changed her job duties and any recommendations

15  made by the ABOI.  Plaintiff's arguments regarding

16  pretext premised on these facts are unsupported and the

17  Court will not consider them.  The Court also notes

18  Plaintiff's reliance on the Master Agreement to show

19  Defendant did not comply with the reassignment policy is

20  misplaced.  First, although Plaintiff provides the

21  relevant portion of the Master Agreement as an Exhibit[18]

22  (see Cody Decl., Ex. V at 112-114), Plaintiff fails to

23  provide necessary authentication of the document from the

24  Werdebaugh deposition, apparently during which the

25  document was introduced as an exhibit.  See Orr, 285 F.3d

26  _____

27  [18]    Plaintiff did not provide a citation to this
    document.  Again, the Court is not a "pig hunting for
28  truffles."  Guatay, 670 F.3d at 987 (quotations and
    citation omitted).

at 774.  The document lacks requisite authentication and
the Court will not consider it.  Even if the Court were
to consider the Master Agreement, the document alone does
not demonstrate that Defendant failed to comply with the
reassignment policy, without other evidence demonstrating
there was no job notice posted, as Plaintiff baldly
contends.

Despite these preliminary shortcomings, Plaintiff's
evidence of pretext is sufficient to raise a triable
issue of material fact.  First, as argued by Plaintiff,
Defendant has offered no admissible evidence regarding
the staffing needs of the inpatient and outpatient
pharmacies at the time Plaintiff was transferred to
demonstrate the transfer was warranted.  In fact,
Plaintiff presents evidence from the outpatient
supervisor, Sam, who said there was no need for
additional staffing in the outpatient pharmacy at the
time of Plaintiff's transfer.  (PSUF ¶ 75.)  Moreover,
Plaintiff points to Kawahara's deposition testimony,
stating he did not recall whether or not a staffing
assessment was conducted to determine if it was
appropriate to transfer Plaintiff.  (See Curd Decl., Ex.
W at W-19-20, 155:2-156:15.)

Second, Plaintiff has presented evidence that the
employees she had accused of harassing her in the past

remained on staff at the outpatient pharmacy at the time
of the transfer.  A reasonable jury could find that
Plaintiff was transferred to the outpatient pharmacy to
work alongside employees she had previously accused of
harassment as a punishment for her prior EEO activity.
See Emeldi v. Univ. of Oregon, 698 F.3d 715, 729-30 (9th
Cir. 2012) (reversing district court's grant of summary
judgment in favor of the defendant because the plaintiff
had "presented evidence from which a reasonable jury
could conclude that the [defendant's proffered legitimate
reason] is pretextual.").  Finally, the temporal
proximity between Plaintiff's protected activities and
the adverse employment action, discussed supra, in light
of the other evidence Plaintiff presents here, constitute
"specific and substantial" circumstantial evidence that
Defendant's stated reason for transferring her was
pretextual.  Bergene, 272 F.3d at 1142.  Plaintiff's
evidence raises a triable issue that Defendant's reason
for transferring her to the outpatient pharmacy "is
unworthy of credence."  Burdine, 450 U.S. at 256.

     Accordingly, Plaintiff has met her resulting burden
as to her prima facie retaliation claim, on the basis of
her transfer to the outpatient pharmacy, and has raised a
triable issue as to whether or not Defendant's proffered
legitimate reason for Plaintiff's transfer was
pretextual.  See Stegall, 350 F.3d at 1065; see also

1  <u>Celotex</u>, 477 U.S. at 331;  <u>Anderson</u>, 477 U.S. at 256;

2  Fed. R. Civ. P. 56(a).  The Court hereby DENIES

3  Defendant's Motion as to this claim.

4

5  **B.   Harassment/Hostile Work Environment**

6      Defendant argues Plaintiff has failed to exhaust her

7  administrative remedies with respect to her second claim,

8  thereby divesting the Court of subject matter

9  jurisdiction over it.  (<u>See</u> Mot. at 11-12.)  In the

10  alternative, Defendant argues that Plaintiff cannot

11  submit sufficient evidence to establish her claim.  (<u>Id.</u>

12  at 12-13.)

13

14      Since the issue of exhaustion goes to the Court's

15  subject-matter jurisdiction, the Court addresses it

16  first.  See <u>Potter v. Hughes</u>, 546 F.3d 1051, 1061 (9th

17  Cir. 2008) (noting that courts should "address subject

18  matter jurisdiction at the outset in the 'mine run of

19  cases,' and reach other issues first only where the

20  jurisdictional issue is 'difficult to determine . . .

21  .'") (quoting <u>Sinochem Int'l Co. v. Malaysia Int'l</u>

22  <u>Shipping Corp.</u>, 549 U.S. 422, 436 (2007)).

23

24      Defendant is correct that before filing a claim for

25  employment discrimination in violation of Title VII in

26  federal court, a plaintiff is required first to exhaust

27  administrative remedies by filing such a claim with

28

1  either the Equal Employment Opportunity Commission

2  ("EEOC") or the California Department of Fair Employment

3  and Housing ("DFEH") within 180 days of the alleged

4  unlawful employment practice.  See 42 U.S.C. §§ 2000e-

5  5(1), 5(e)(1), 8(b); 29 C.F.R. § 1626.10(c).  Only after

6  a plaintiff has received a right-to-sue letter from

7  either the EEOC or DFEH may a plaintiff file suit.  See

8  42 U.S.C. §§ 2000e-5(f)(1).  In Freeman v. Oakland

9  Unified Sch. Dist., 291 F.3d 632 (9th Cir. 2002), the

10 Ninth Circuit addressed the requirement that all

11 administrative remedies be fully exhausted in the Title

12 VII context.  The Freeman court recognized that "the

13 administrative charge requirement serves the important

14 purposes of giving the charged party notice of the claim

15 and narrowing the issues for prompt adjudication and

16 decision."  Id. at 636 (quoting B.K.B. v. Maui Police

17 Dep't, 276 F.3d 1091, 1099 (9th Cir. 2002)).

18

19     "Subject matter jurisdiction extends to all claims of

20 discrimination that fall within the scope of the EEOC's

21 actual investigation or an EEOC investigation that could

22 reasonably be expected to grow out of the charge."

23 Vasquez, 349 F.3d at 644.  Moreover,

24     "[i]n determining whether a plaintiff has exhausted
       allegations that she did not specify in her
25     administrative charge, it is appropriate to consider
       such factors as the alleged basis of the
26     discrimination, dates of discriminatory acts
       specified within the charge, perpetrators of
27     discrimination named in the charge, and any locations
       at which discrimination is alleged to have occurred.
28

> In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case."

B.K.B., 276 F.3d at 1100.

Here, Plaintiff filed three EEO complaints that gave rise to this lawsuit. (See Werdebaugh Decl., Exs. 1, 2, 3; PSUF ¶¶ 48, 80, 95.) Construing the complaints liberally and drawing all reasonable inferences in favor of Plaintiff, the non-moving party, Plaintiff did not mention racial harassment or a hostile work environment based on race as one of her claims or factual bases for any of her claims. See B.K.B., 276 F.3d at 1100 ("We construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." (internal quotations, citation omitted)). On first glance, thus, it appears she has failed to exhaust her administrative remedies with respect to her harassment/hostile work environment claim.

In Opposition, Plaintiff argues that she "has alleged the same facts which constitute retaliation also constitute harassment based on discrimination" and that her hostile work environment claim has been exhausted because "an investigation of the EEOC charge would have revealed the facts supporting a claim of discrimination, and a claim of discrimination would have 'grown out of

1  the charge.'"   (Opp'n at 24 (quoting <u>Vazquez</u>, 349 F.3d at

2  634).)   In support of her harassment/hostile work

3  environment claim, Plaintiff presents evidence that she

4  argues evidences Kawahara's racial bias against her.

5  (<u>See</u> Opp'n at 24; PSUF ¶¶ 107-108; Uche-Uwakwe Decl. ¶

6  56(a)-(d), 57.)   As discussed herein, the Court has found

7  inadmissible Plaintiff's evidence regarding harassment

8  and discrimination that was previously adjudicated in a

9  related lawsuit.   The only remaining evidence here upon

10  which Plaintiff bases her harassment/hostile work

11  environment claim is as follows: (1) Kawahara assigned

12  preferred shifts to Asian employees, despite Plaintiff's

13  seniority (PSUF ¶ 107 (limited by the Court's evidentiary

14  ruling, <u>supra</u>); Uche-Uwakwe Decl. ¶ 56(d)); (2) in 2000,

15  Kawahara did not meet with Plaintiff, the only African

16  American, but met with all of the other pharmacy

17  employees who were mostly Asian (Uche-Uwakwe Decl. ¶

18  56(a)); and (3) when Plaintiff became pregnant in 2001,

19  Kawahara refused to honor her request to work part-time

20  due to her high-risk pregnancy until after Human

21  Resources and an EEO manager intervened, when he approved

22  the request approximately four months after Plaintiff

23  submitted it (Uche-Uwakwe Decl. ¶ 56(c) (limited by the

24  Court's evidentiary ruling, <u>supra</u>)).

25

26      Plaintiff's evidence proffered in support of her

27  harassment/hostile work environment claim demonstrates

28

1    that her supporting factual contentions are not
2    reasonably related to the matters identified in her three
3    EEO complaints.

4

5        By even the most liberal reading of the EEO
6    complaints here, no reasonable jurist could find
7    Plaintiff's purported racial harassment and subjection to
8    a hostile work environment because of her race or
9    national origin had "grow[n] out of the charge[s]"
10   submitted.  Vasquez, 349 F.3d at 644-45.  Plaintiff's EEO
11   complaints were limited to Kawahara designating her as
12   AWOL, Curtis threatening her with a privacy violation,
13   Kawahara transferring her to the outpatient pharmacy, and
14   Kawahara denying her advanced sick leave, all matters
15   arising in late 2008 through 2012.

16

17       Simply put, the preferential shift assignment to
18   Asian employees, failure to meet with Plaintiff in 2000,
19   and refusal to accommodate Plaintiff's high risk
20   pregnancy in 2001 with a schedule change for several
21   months, do not relate in any respect to the matters
22   giving rise to Plaintiff's EEO complaints at issue in
23   this lawsuit.[19]  Vasquez, 349 F.3d at 645 ("Because

24   _____

25       [19]   The Court notes Plaintiff alleged in the SAC
     that she was subjected to "unwanted harassment and a
26   hostile work environment because of her national origin
     and race" in 2009 and 2010.  (See SAC ¶ 40.)   In
27   Opposition, however, Plaintiff presents no evidence of
     harassment or hostile work environment because of her
28                                          (continued...)

1   Vasquez did not present the legal theory of unlawful
2   retaliation, and the operative facts regarding this part
3   of his claim were not related to the facts in the EEOC
4   charge, he did not exhaust his administrative
5   remedies."); see also Ong v. Cleland, 642 F.2d 316, 319
6   (9th Cir. 1981) (finding EEOC charge must notify the
7   agency of the legal theory being argued and the operative
8   facts at issue and that "[t]he substance of the
9   administrative charge, rather than its label, is the
10  concern of Title VII.").  Although these matters arose
11  during Plaintiff's employment at LLVAMC, took place at
12  LLVAMC, and most concerned Kawahara, they are not
13  sufficiently related to Plaintiff's charges in her three
14  EEO complaints at issue here to provide sufficient notice
15  to the EEOC.  See B.K.B., 276 F.3d at 1100.
16
17       Accordingly, the Court finds it does not have subject
18  matter jurisdiction over Plaintiff's harassment/hostile
19  work environment claim because Plaintiff failed to
20  exhaust her administrative remedies with respect to this
21  claim.  See B.K.B., 276 F.3d at 1099 ("In order to
22  establish subject matter jurisdiction over her Title VII
23  claim, Plaintiff was required to exhaust her
24  administrative remedies."); EEOC v. Farmer Brothers Co.,
25
26
27       [19](...continued)
28  national origin and race that occurred in 2009 and 2010.

1  31 F.3d 891, 899 (9th Cir. 1994) (same).  The Court

2  GRANTS Defendant's Motion as to this claim.

3

4                    **VI. CONCLUSION**

5       For the foregoing reasons, the Court DENIES IN PART

6  Defendant's Shinseki's Motion for Summary Judgment as to

7  Plaintiff's retaliation claim, as Plaintiff has

8  demonstrated a <u>prima facie</u> case and raised a triable

9  issue regarding whether or not Defendant's proffered

10  reason for transferring her to the outpatient pharmacy

11  was pretextual.  The Court GRANTS IN PART Defendant

12  Shinseki's Motion for Summary Judgment as to Plaintiff's

13  harassment/hostile work environment claim, as the Court

14  does not have subject matter jurisdiction over the claim

15  that has not been exhausted administratively.  The Court

16  hereby dismisses Plaintiff's harassment/hostile work

17  environment claim for lack of subject matter

18  jurisdiction.

19

20

21  Dated:  _September 18, 2013_     _____

                                       VIRGINIA A. PHILLIPS
22                                   United States District Judge

23

24

25

26

27

28